Hugh O'NEILL, Appellant,

v.

Sam D. STAROBIN et al., Appellees.

No. 7611.

District of Columbia Court of Appeals.

Argued May 2, 1974.

Decided Sept. 24, 1976.

Hugh O'Neill pro se.

E. Calvin Golumbic, Asst. Corp. Counsel, Washington, D. C., with whom C. Francis Murphy, Corp. Counsel, Washington, D. C., at the time the brief was filed, and Richard W. Barton, Asst. Corp. Counsel, Washington, D. C., were on the brief, for appellees.

Before REILLY, Chief Judge, and KELLY and HARRIS, Associate Judges.

REILLY, Chief Judge:

This is an appeal from an order of the trial court granting summary judgment in favor of defendants in an action brought by an employee of the Department of General Services to restrain the director, an assistant director, and the personnel officer of such department from transferring him to another position pending administrative disposition of his proposed dismissal.

Appellant (plaintiff, below) was an engineering technician (GS–12) in the Bureau of Repairs and Improvements, Department of General Services, serving as Chief of the Work Order Branch. On February 27, 1973, he handed a letter to his immediate supervisor, appellee Henson, assistant director of the bureau, charging Henson with harassment and attempted intimidation and announcing that appellant had instructed his subordinates henceforth to take orders from appellant alone. On March 2, 1973, Henson notified appellant in writing that he was proposing the latter's removal on the grounds that the letter was defamatory and that the actions indicated therein were insubordinate. Appellant was advised that final decision on the proposed removal rested with the Director of General Services and was given 10 days to answer the charges in person or in writing.

On the same day, appellee Quigley, the personnel officer, notified appellant verbally and in writing that, effective March 5, 1973, appellant was detailed for 30 days to a position in another unit, viz., engineering technician (GS–12), the Bureau of Construction Management.[1] Later that day, Henson ordered appellant to turn in his key and vacate his office by the morning of March 5.

On March 5, appellant notified Henson and Quigley that on advice of counsel, he was not vacating his current office and was refusing to report to the Bureau of Construction Management. Thereafter, on the same day, appellee Henson notified appellant in writing that he was amending his statement of reasons for proposing appellant's removal by adding further charges of insubordination respecting the refusal to accept the detail and for absence without official leave on March 5. As in the earlier notice, appellant was advised of his right to reply within 10 days. On the following day, March 6, appellant did report for work at the Bureau of Construction Management to which he had been detailed.

On March 21, 1973, appellant instituted an action in Superior Court to restrain interference with his performance of duties in his old job; to have his reassignment on March 2 declared null and void and the records corrected to show him present for duty on March 5; to compel Henson to withdraw all charges of any kind, based upon appellant's refusal to report to a new assignment; and for other incidental relief. In his complaint, appellant asserted that his reassignment was an adverse action within the contemplation of 5 U.S.C. § 7511(2), 5 C.F.R. § 752.201 (1972), and Chapter 16, District of Columbia Personnel

1. The written action was on a Standard Form 52 (United States Civil Service Commission) and indicated the nature of the action as "DE-TAIL NTE 30 days (NTE 4/3/73)," i. e., detail not to exceed 30 days.

Manual.[2] And as such, the reassignment was in violation of the procedural safeguards to which he was entitled pursuant to 5 U.S.C. § 7512, 5 C.F.R. § 752.201 (1972) and Chapter 16, District of Columbia Personnel Manual.[3] Further, appellant alleged that administrative remedies were not available to him and even if available, could not be utilized soon enough to prevent irreparable harm.

Motions by appellant for a temporary restraining order and a preliminary injunction were denied. On April 23, 1973, defendants moved for summary judgment, asserting that the temporary assignment pending disposition of the removal charges was legal, and informed the court that on April 6, appellant was given written notice of dismissal effective April 14, advised of his rights to an administrative appeal, and to a stay of his dismissal pending appeal to the Mayor-Commissioner.[4] On April 13, appellant noted his administrative appeal of his dismissal.[5]

On May 2, appellant filed a cross-motion for summary judgment which was denied on the date the court entered judgment for the defendants.

Appellant contends that his assignment to another position in the Department of General Services was in effect a reduction in rank and hence, by statutory definition,[6] constituted an adverse action against him. As a "preference eligible employee",[7] he asserts a right to the procedural safeguards provided by 5 U.S.C. § 7512 before any proposed adverse action could be effective. Asserting that the agency failed to comply with the pertinent directives, he argued that he is entitled to judicial relief from the consequences of such arbitrary and unlawful assignment. In describing such assignment as a "reduction in rank", appellant relies upon the definition of that term by the Civil Service Commission and the District government in its Personnel Manual.[8] Under these concepts, a reduc-

2. 5 U.S.C. § 7511(2) defines an "adverse action" as a removal, suspension for more than 30 days, furlough without pay, or reduction in rank or pay. Both 5 C.F.R. § 752.201 (1972) and the District of Columbia Personnel Manual, Ch. 16A–3, include reduction in rank within the definition of adverse action.

3. Generally, these provide for (1) at least 30 days' advance written notice stating any and all reasons, specifically and in detail, for the proposed action; (2) a reasonable time for answering the notice personally and in writing and for furnishing affidavits in support of the answer; and (3) a notice of an adverse decision.

4. The order of removal found the following charges sustained: (a) in connection with appellant's letter of February 27, 1973, conduct unbecoming an employee through insubordination, undermining authority, making defaming comments, and being disruptive of office working relationships and morale; (b) insubordination by refusing to accept a detail and to turn in his office key; and (c) absence without oficial leave on March 5, 1973.

5. As a nonprobationary veteran preference eligible, appellant had a right to appeal from such adverse action to the Mayor (D.C. Personnel Manual Ch. 15B–5(b)) and to the

Civil Service Commission (5 C.F.R. §§ 752.-201(a)(3) and 752.203 (1973)).

6. *See* note 2, *supra.*

7. *See* 5 U.S.C. §§ 2108, 7511(1).

8. Federal Personnel Manual Supp. 752–1 (Feb. 4, 1972) provides:

In law and the Commission's regulations, the term *rank* means something more than a numerical grade, or class, or level under a classification system or its equivalent in the Coordinated Federal Wage System. Basically, it means an employee's relative standing in the agency's organizational structure, as determined by his official position assignment. An employee's position assignment may be changed only by an official personnel action. Consequently, a reduction in rank can occur only when the employee is moved from one position to another by an official personnel action. (An official personnel action is an action which requires the issuance of a Standard Form 50 or a form used instead of SF 50.) When an employee is made the subject of an official personnel action which results in a lowering of his relative standing in the agency's organizational structure, a reduction in rank has occurred, even though the employee has not been reduced in numerical grade, or

tion in rank occurs when the employee's "relative standing" in the organization is lowered. Appellant contends that his transfer from his position as Chief of the Work Order Branch to another position where he was subordinate to the chief of another branch constituted such a reduction.[9] He points to the fact that in his former position he had supervisory duties, whereas in the new assignment, he had none.[10]

The position of the defendant is that the temporary assignment or detail of appellant to another position in the agency at the same grade and rate of pay was authorized under applicable directives;[11] the detail was not an adverse action and did not effect a reduction in rank;[12] accordingly, there was no necessity to comply with the procedures mandated by 5 U.S.C. § 7512. Furthermore, they say appellant is not entitled to invoke the jurisdiction of

the court since he had failed to exhaust available administrative remedies.

We have set forth at some length the opposing contentions of the parties to show that what is basically at issue in this case is the meaning and interpretation of the applicable regulations and directives. In our opinion, the questions raised should be answered by the agencies which promulgated the directives. We note that appellant's appeal from the decision to dismiss him is still pending in administrative channels. Among the reasons given for his removal are his failure to report to his new detail and his one-day assertedly unauthorized absence from duty. Since these charges stem from appellant's refusal to accept his new assignment, the propriety of the action taken may be litigated in the administrative appeal. If appellant's contentions are correct, the issues will be resolved in his favor and judicial relief will be unneces-

class, or level. [FPM Supp. 752–1, S1–4a (1972) ; emphasis in original.]

The District's Personnel Manual, Ch. 16A–3, states :

*Reduction in Rank*—means the lowering of an employee's relative standing in an organization by making him the subject of a personnel action. (See FPM Supplement 752–1 for a detailed explanation.)

We note that the District is in the process of revising Chapter 16. The parties are in dispute as to the nature of the action taken in this case, appellees contending that there was no "official personnel action" in this instance.

9. Federal Personnel Manual Supp. 752–1, S1–4b, gives the following as an example of reduction in rank :

Reassignment to a position which is subordinate to the position previously held or subordinate to a position equivalent to the position previously held.

10. FPM Supp. 752–1, *supra*, states that reassignment from a supervisory to a nonsupervisory position does not constitute a reduction in rank but cautions that although this factor in and of itself will not establish reduction in rank, an employee is reduced in rank if his *relative standing in the agency's organizational* structure is lowered in connection with such action. [Sec. S1–4c(3) and Note.]

11. Pursuant to 5 C.F.R. § 752.202(d) (1973)—

[A]n employee against whom adverse action is proposed is entitled to be retained in an active duty status during the notice period. When circumstances are such that the retention of the employee in an active duty status in his position may result in damage to Government property or may be detrimental to the interests of the Government or injurious to the employee, his fellow workers, or the general public, the agency may temporarily assign him to duties in which these conditions will not exist. . , District Personnel Manual Ch. 16B–3a(5) (a) and (b) tracks the foregoing language. *See also* FPM Supp. 752–1, § S5–4a and c (Feb. 4, 1972).

12. FPM Subchapter 8–1 (Aug. 26, 1970) states :

A *detail* is the temporary assignment of an employee to a different position for a specified period, with the employee returning to his regular duties at the end of the detail. Technically, a position is not *filled* by a detail, as the employee continues to be the incumbent of the position from which detailed. [Emphasis in original.]

*See also* District Personnel Manual Ch. 8C–4b (Apr. 26, 1974).

sary. Appellant has not suffered diminution in grade or rate of pay by reason of his temporary assignment.[13]

The general rule is that administrative remedies must be exhausted before judicial relief may be sought. *McKart v. United States,* 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969); *Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 58 S. Ct. 459, 82 L.Ed. 638 (1938); 3 Davis, Administrative Law § 20.01 *et seq.* (1958). In applying that rule, this court recently observed that "[o]ne rationale of the rule is judicial efficiency and economy, for if an administrative agency can vindicate or protect an individual's rights there is no need for a court to intervene. . . ." *Foley v. District of Columbia Board of Elections and Ethics,* D.C.App., 358 A.2d 305, 306 (1976). *See also Tarpley v. District of Columbia,* D.C.App., 342 A.2d 14, 16 (1975). Another court has stated:

A second reason for the doctrine is that requiring exhaustion will insure that the agency is given an opportunity to apply its particular administrative expertise to the question being reviewed. This policy is usually applied to the determination of technical factual disputes or to the determination of disputes involving the agency's interpretation of its own regulations or orders. In both situations the reviewing court would be. aided by having the informed opinion of the agency. [*Consumers Union of United States, Inc. v. Cost of Living Council,* Em.App., 491 F.2d 1396, 1399 (1974), *cert. denied,* 416 U.S. 984, 94 S.Ct. 2387, 40 L.Ed.2d 761 (1974).]

In *Tarpley v. District of Columbia, supra* at 17, we indicated that where an

employee ". . . was provided an administrative remedy by the civil service laws and regulations, the proper procedure is that described by the Court of Claims in *Adler v. United States,* 146 F.Supp. 956, 958, *cert. denied,* 352 U.S. 894, 77 S.Ct. 131, 1 L.Ed.2d 87 (1956)" and we quoted the following language from *Adler,* which bears repetition:

But, notwithstanding the fact that the appeal is not mandatory, we think that an employee must appeal to the Civil Service Commission for an adjustment of his grievances before resorting to the courts, except in unusual circumstances. We think so because the Civil Service Commission was the agency set up by Congress for the express purpose of hearing the grievances of employees. Congress conferred on the Commission jurisdiction to hear these grievances; it did not confer this jurisdiction on the courts, except where the Commission had acted unlawfully. So, it is to the Commission that an employee must resort, in the first instance; and until that Commission has finally passed on the case, the courts should not take jurisdiction, and then only where the Commission has misapplied the statute under which the employee claims, or in some other way has deprived the employee of the rights to which the law entitles him.

Inasmuch as the issues here turn upon the meaning and interpretation of the agencies' own regulations and directives, the determination of which is particularly within their own expertise, and because appellant's claims of the impropriety of the action taken against him may be adequately vindicated in the administrative

---

13. In passing upon the claim of an employee that his transfer to another position was a reduction in rank, the Court of Claims indicated that "[t]he overriding criteria in determining comparability of positions in a reassignment are *grade* and *pay.* . . ."

*Comberiate v. United States,* 203 Ct.Cl. 285, 289 (1973) (emphasis in original). *See also Roberson v. District of Columbia Board of Higher Education,* D.C.App., 359 A.2d 28, 32 (1976).

process,[14] we hold that this case presents no valid exception to the application of the rule of exhaustion of administrative remedies.

*Affirmed.*

---

14. *Cf. American Federation of Government Employees v. Acree,* 155 U.S.App.D.C. 20, 23, 475 F.2d 1289, 1292 (1973).