Takashi A. BUFFORD, Appellant,

v.

DISTRICT OF COLUMBIA PUBLIC
SCHOOLS, Appellee.

No. 91–CV–484.

District of Columbia Court of Appeals.

Submitted May 15, 1992.
Decided June 12, 1992.

Takashi A. Bufford, pro se.

John Payton, Corp. Counsel, Charles L. Reischel, Deputy Corp. Counsel, and James C. McKay, Jr., Asst. Corp. Counsel, were on the brief, for appellee.

Before ROGERS, Chief Judge, and TERRY and STEADMAN, Associate Judges.

ROGERS, Chief Judge:

Appellant Takashi Bufford appeals the order denying his petition for review of the dismissal of his claim against the District of Columbia Public Schools by the Office of Employee Appeals. We affirm.

I

Appellant was hired in June, 1984, by the D.C. Public Schools (DCPS) as Chief of the Negotiated Service Contract Unit, a nonlegal position, at a grade 11 salary. In November, 1984, appellant was contacted by DCPS' Division of Special Education regarding a newly created position as Attorney Advisor. He was subsequently offered the position by Dr. Wilbur A. Millard, then Associate Superintendent of Schools and head of the Division of Special Education. Appellant contends that he was originally told that the new position would be at the grade 13 salary level, but Dr. Millard asked him to enter the position at a grade 12 salary pending his admission to the District of Columbia Bar. According to appellant, the position description for the job did not require admission to the D.C. Bar, but Dr. Millard told appellant that the personnel process would be expedited if he accepted the position at the grade 12 level.[1]

Appellant claims that after he was admitted to the District of Columbia Bar on April 8, 1985, he raised the issue of his promotion to grade 13 on several subsequent occa-

sions, but "received no definitive response." Further, appellant maintains that "[o]n no occasion did Dr. Millard or other supervising officials of DCPS apprise [him] of his right to formally grieve this dispute." Appellant also claims that he continued his informal efforts to resolve the dispute with Dr. Millard over his status until June, 1987.[2] Appellant wrote to George Margolies, General Counsel of the School System, on June 18, 1987, requesting that he be given the promotion and the differential in pay between a grade 12 and a grade 13 retroactive to the date of his admission to the D.C. Bar.

Before Mr. Margolies responded to appellant's letter, appellant filed an appeal on August 31, 1987, with the Office of Employee Appeals (OEA).[3] By letter dated October 27, 1987, OEA advised appellant that "there is a question whether OEA has jurisdiction over the action you are appealing," and that:

> an employee must have received a final Agency decision regarding the action that is being appealed before the employee has a right to petition [OEA]. If the Agency has not made a final decision, an appeal to OEA is usually premature since it is likely that the employee has not completed the Agency's own review procedures.

The letter also directed appellant to submit a written statement by November 12, 1987, explaining why OEA had jurisdiction over his appeal. Appellant's response [4] to OEA admitted that he had yet to receive a response to his June 18, 1987, letter to Mr. Margolies, but claimed that "[t]he time that has elapsed since my initial inquiry clearly establishes that any further pursuit of an agency decision would be an exercise in futility." Appellant stated that:

---

1. Appellee contends that appellant was offered, and accepted, the position at the grade 12 level, and that "[h]e was told that he would be considered for promotion to the grade 13 level after obtaining admission to the D.C. Bar."

2. Dr. Millard retired from the DCPS in late 1987.

3. In completing the OEA's petition for review form, appellant responded to the question "What was the date you received the final notice of the decision to take this action?" with the statement "No action taken by agency."

4. OEA did not receive appellant's response to OEA's letter until November 25, 1988, thirteen days after the deadline set in OEA's letter.

the DCPS Grievance Procedures, DCMR 5 § 803.1,[5] require that all grievances be raised at the level where the conflict giving rise to the grievance first occurred. In my case this is not possible due to the retirement of the DCPS official with whom I negotiated my employment agreement,·provisions of which are in dispute.

On March 1, 1988, an OEA Hearing Examiner (Warren Cruise) advised appellant that "a review of [his] response shows that [appellant had] not sought a remedy from the highest level of [DCPS] before filing [his] appeal," and directed appellant to advise what steps had been taken to receive a final response from DCPS.

In reply, by letter of March 9, 1988, appellant claimed that his failure to elicit a final agency response was through "no fault of [his] own but rather the result of DCPS' bad faith." Appellant stated that the Associate Superintendent with whom he had negotiated his employment contract had retired and that the Associate Superintendent's subordinate had advised appellant that she lacked the authority to grant the relief he sought. Appellant acknowledged, however, that he had met again with Mr. Margolies, the General Counsel, on February 23, 1988, and had been advised that "there was a strong possibility that [Mr. Margolies] could convince the current Superintendent to settle this matter," but appellant reiterated his belief that further pursuit of administrative remedies would be futile.

While the OEA appeal was pending, appellant and the DCPS attempted to settle their dispute. On May 31, 1988, Mr. Gary Freeman, the Director of the Office of Management Services, notified appellant that Dr. Andrew Jenkins, the Acting Superintendent of Schools, had approved a settlement offer that would have given appellant the salary differential between grades 12 and 13 for the period between April 8, 1985, and June 22, 1987, but no promotion to a grade 13 level.[6] Appellant made a counteroffer, by letter of June 13, 1988, that any settlement include a "promotion to DS–13 step 4 from current grade DS–12 step 4, effective October 1, 1988." On June 17, 1988, Mr. Freeman wrote appellant that the settlement offer in his May 31, 1988, letter was "the final position of the school system in regards to this matter."

On October 31, 1988, OEA Hearing Examiner Cruise interpreted Mr. Freeman's June 17, 1988, letter as a final agency decision. DCPS filed a motion on November 10, 1988, requesting that Mr. Cruise reconsider his interpretation, and asserted that Mr. Freeman's letter was not a final agency decision but merely the DCPS' final position in settlement negotiations. On September 25, 1989, OEA Hearing Examiner Gilbert Baber held a pre-hearing conference at which the parties presented additional arguments on the question of jurisdiction. Mr. Baber thereafter concluded that appellant had not obtained a final agency decision, and he recommended to a three-member panel of OEA that the appeal be dismissed for lack of jurisdiction.

On February 15, 1990, the OEA panel dismissed appellant's appeal for lack of jurisdiction. Appellant sought reconsideration by the full five-member OEA,[7] which denied the petition for review on April 20, 1990. The OEA order and decision stated that there was no evidence in the record that appellant had presented his claim of entitlement to promotion to grade 13 to his immediate supervisor, as required by the applicable regulations,[8] and that even had the informal grievance process been completed, the "[a]gency's informal procedures do not provide a process whereby a denial

---

5.  5 DCMR § 803.1 provides that "all grievances shall be raised initially at the level where the conflict or situation giving rise to the grievance occurred."

6.  On June 22, 1987, appellant was reassigned as a Procurement Analyst at a grade 12 level.

7.  *See* D.C.Code § 1–606.1(d) (1987).

8.  As part of the informal grievance procedure, 5 DCMR § 803.4 (1987) provides that:

    [a]n employee shall initiate the informal grievance settlement procedures by presenting the grievance to the employee's immediate supervisor, either orally or in writing.

of Employee's informal grievance becomes a final agency decision—a decision to deny Employee's informal grievance is the opinion of the Employee's supervisor, not an official Agency position." The OEA concluded that "[s]ince Employee has neither initiated the formal grievance process nor received a written decision on that grievance from the Superintendent of Schools, the Office lacks jurisdiction to review his appeal."

Appellant appealed OEA's April 20, 1990, order to the Superior Court pursuant to D.C.Code § 1–606.3(d) (1987). On February 25, 1991, the trial judge affirmed the OEA order dismissing appellant's appeal, finding that there was "no evidence" of "a written decision of the Superintendent of Schools or his or her designee" in the record. In addition, the trial judge was

> not persuaded that [appellant] is entitled to OEA review on the grounds that the Agency had failed to advise him of the availability of the formal grievance procedures. Despite the fact that [appellant] may not have known of the availability of the grievance procedures initially, this issue was effectively cured through the numerous occasions on which [appellant] was advised of the proper procedures to follow.

## II

■ Appellant makes three claims of error on appeal, regarding notice, OEA jurisdiction, and the final agency decision. Our scope of review, even though OEA's decision was originally reviewed in the trial court, is the same that we apply in administrative appeals that come directly to the court. *Stokes v. District of Columbia*, 502 A.2d 1006, 1010 (D.C.1985). We examine the agency record to determine whether there is substantial evidence to support OEA's findings of fact, or whether OEA's action was arbitrary, capricious or an abuse of discretion. *Id.*

## A

■ First, appellant contends that DCPS violated the "plain and unambiguous language of 5 DCMR § 802.6 and D.C.Code § 1–617.2" in failing to give him notice of his right to formally grieve his claim against DCPS, and that this is "the only reason" that the dispute has not been resolved. The regulations on which appellant relies do not support his position.[9] As OEA stated, these regulations simply preserve the right of an employee initially ignorant of the procedures to file a grievance after being informed. The OEA panel's April 20, 1990, decision stated that the regulations appellant cited, 5 DCMR §§ 802.6 & .7, did not permit the employee to "permanently avoid [the DCPS] grievance process simply because he was initially unaware of the procedures," and noted that the regulations provide that the employee has ten working days after being informed of the procedures to file a grievance in the proper manner.

The trial judge found that:

> [d]espite the fact that [appellant] may not have known of the availability of the grievance procedures initially, this issue was effectively cured through the numerous occasions on which [appellant] was advised of the proper procedures to follow. [Appellant] knew, or should have known, that the Agency had formal and detailed procedures, and that he had failed to utilize said procedure.

---

9. D.C.Code § 1–617.2 (1991 Repl.), provides in pertinent part:

> The ... District of Columbia Board of Education ... shall issue rules and regulations providing procedures for the prompt handling of grievances of employees and applicants for employment. The grievance system shall be made known to all employees and shall be consistent with the procedures, policies and guidelines set forth in pertinent District personnel rules and regulations. The grievance system shall provide for the expeditious ad-

justment of grievances and complaints and the prompt taking of corrective action when the complaint or grievance is, upon review, found to be justified.

5 DCMR 802.6 provides:

> An employee who fails to follow the proper procedures for filing a grievance shall not forfeit the right to file a grievance if the employee was not informed of the proper grievance procedures. The employee shall have ten (10) working days to file the grievance in a proper manner.

There is ample evidence in the record to support these findings, and they are not clearly erroneous. D.C.Code § 17–305(a) (1989 Repl.); *see Cahn v. Antioch University,* 482 A.2d 120 (D.C.1984); *Edwards v. Woods,* 385 A.2d 780, 783 (D.C.1978) (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 541–42, 92 L.Ed. 746 (1948)). By the time of appellant's November 25, 1987, response to OEA regarding OEA's concern about its jurisdiction, appellant was aware of the grievance procedures. Appellant, moreover, admits that he learned of the formal grievance procedure once he appealed to OEA in 1987. Nevertheless, he did not file a formal grievance at any time. Even if appellant's June 17, 1987, letter to Mr. Margolies were to suffice for purposes of step one of the formal grievance procedure,[10] appellant did not pursue additional formal grievance procedures. Moreover, appellant's claim of ignorance of the formal grievance procedures has a hollow ring. *Cf. Lynch v. Meridian Hill Studio Apts., Inc.,* 491 A.2d 515 (D.C.1985) (attorney chargeable with knowledge of rules of court). Hence, we conclude that any procedural error by the agency was harmless.[11] *See Arthur v. District of Columbia Nurses' Examining Bd.,* 459 A.2d 141, 146 (D.C. 1983).

**B**

■ Second, appellant contends that the trial judge erred by ruling that the "numerous informal steps" taken by appellant to resolve the salary dispute did not render further intraagency attempts to resolve the dispute "a mere exercise in futility," there-by exempting appellant from the requirement that he exhaust administrative remedies.

In nearly every situation, "administrative remedies must be exhausted before judicial relief may be sought." *C Street Tenants Ass'n v. District of Columbia Rental Housing Comm'n,* 552 A.2d 524, 525 (D.C. 1989) (quoting *O'Neill v. Starobin,* 364 A.2d 149, 153 (D.C.1976) (citations omitted)). "This rule insures that the agency has an opportunity to develop a factual record and to apply its expertise to the issues." *Id.; O'Neill v. Starobin, supra,* 364 A.2d at 153. Appellant, however, relies on *Sierra Club v. Thomas,* 264 U.S.App.D.C. 203, 213, 828 F.2d 783, 793 (1987), for the proposition that "agency inaction may represent effectively final agency action that the agency has not frankly acknowledged." In such a situation, " 'the court can undertake review as though the agency had denied the requested relief and order an agency to either act or provide a reasoned explanation for its failure to act.' " *Id.,* (quoting *Public Citizen Health Research Group v. Food and Drug Administration,* 238 U.S.App.D.C. 217, 282, 740 F.2d 21, 32 (1984)); *see also United Black Fund, Inc. v. Hampton,* 352 F.Supp. 898 (D.D.C.1972) (exhaustion inapplicable where clearly a futile act). Appellant claims that he "doggedly pursued every recourse available to him," and that any further attempts to resolve the dispute with DCPS would have been merely "an exercise in futility."

In *Barnett v. District of Columbia Dep't of Employment Services,* 491 A.2d

---

**10.** The formal grievance procedure requires (1) a complaint in writing to the employee's immediate supervisor, 5 DCMR § 804; (2) an appeal to the regional superintendent, division head, or office director, 5 DCMR § 805; and (3) an appeal to the Superintendent of Schools, 5 DCMR § 806. Finally, the Superintendent or his [or her] designee must give the employee a written decision within 10 days of the hearing. 5 DCMR § 806.7.

**11.** Appellant's reliance on *Ainsworth v. United States,* 180 Ct.Cl. 166 (1967) is misplaced; there is no basis for a claim that the DCPS affirmatively misled appellant about the formal grievance procedure. Similar distinctions exist with regard to appellant's reliance on *MacKenzie v. District of Columbia Unemploymt. Compens. Bd.,* 129 U.S.App.D.C. 258, 393 F.2d 659 (1968) (agency notice of adjudication was insufficient when mailed to out-of-state temporary address instead of permanent local address when it was known that temporary address had been abandoned), and *Thomas v. District of Columbia Department of Employment Services,* 490 A.2d 1162 (D.C. 1985) (insufficient evidence employee given notice by agency either of employer's appeal of initial decision to grant employee benefits and consequent hearing before appeals examiner, or of decision to reverse grant of benefits and employee's right to appeal that determination).

1156 (D.C.1985), concerning the Unemployment Compensation Act, the court held that it has authority "to relax the [exhaustion] requirement in exceptional cases." *Id.* at 1163. In that case, the court concluded that Barnett had met his burden to make "a strong showing" of "compelling circumstances." *Id.* at 1161, 1163. Barnett had been fired in 1983 from his job as a correctional officer for not disclosing in his 1980 employment application a felony conviction that the federal government had failed to expunge in 1976, as required pursuant to the Federal Youth Corrections Act. *Id.* at 1157–58. After Barnett unsuccessfully attempted to locate his trial attorney, who had moved from the jurisdiction, Barnett's claim for unemployment compensation was denied by a claims deputy, whose decision was affirmed by the appeals examiner. *Id.* at 1158. Thereafter, Barnett did not seek further administrative review of the decision, as he was entitled to do under 18 DCMR § 4610 (1983), nor did he seek judicial review. *Id.* Only after the ten-day time limit for filing an intraagency appeal had expired did Barnett first learn that he was entitled to have had his conviction expunged. He then filed a motion with the sentencing judge to correct his sentence, which was done in October 1983, *nunc pro tunc* to May 1976. *Id.* Thereafter Barnett filed for reconsideration of the denial of his claim for unemployment compensation. The Office of Appeals and Review dismissed his petition as untimely filed. *Id.* The court, finding no misconduct by Barnett under the Unemployment Compensation Act, rejected the government's argument that he had failed to exhaust his administrative remedies, noting that "the federal government's error, combined with the delay in securing a court order of expungement, are compelling circumstances." *Id.* at 1163. The concurring opinion in *Barnett, supra,* emphasized the narrowness of the exception to the exhaustion requirement. *Id.* at 1164 (opinion of Terry, J.).

We find no principled basis, in view of the statutory scheme under the District of Columbia Comprehensive Merit Personnel Act, *see Stokes v. District of Columbia, supra,* 502 A.2d at 1009, to apply a different standard in the instant case. Consequently, we conclude that appellant has not met his burden to make a substantial showing of "compelling circumstances" such as would demonstrate that continued efforts by appellant to resolve the conflict with DCPS "would obviously [have] be[en] futile act[s]." *United Black Fund Inc. v. Hampton, supra,* 352 F.Supp. at 902. Appellant has not shown that DCPS would have been unable or unwilling to consider his formal grievance, had one been filed. *See Dano Resource Recovery, Inc. v. District of Columbia,* 566 A.2d 483, 486 (D.C. 1989). Even viewing appellant's letter of June 17, 1987, to Mr. Margolies as effectively complying with step one of the formal grievance procedure, it is not surprising that appellant had not received a final decision from DCPS. Appellant informed OEA examiner Cruise that he had been told that "there was a strong possibility that [Mr. Margolies, the General Counsel] could convince the current Superintendent to settle this matter." Although the settlement efforts later broke down, by entering into settlement negotiations even in the absence of a formal grievance, DCPS demonstrated its willingness to resolve the dispute.[12]

Nor is appellant blameless, as was Barnett, since appellant concedes that he knew by the end of 1987 of the formal grievance procedures but did not follow them. Appellant's complaint about DCPS' delay in responding to his grievance is unpersuasive. "It is well established ... that delay alone will not suffice to trigger the futility exception." *Dano Resource Recovery, Inc. v. District of Columbia, supra,* 566 A.2d at 486; *C Street Tenants Ass'n v. District of Columbia Rental Housing Commission, supra,* 552 A.2d at 526. While a considerable amount of time may have passed after appellant first spoke to Dr. Millard about a promotion following appellant's admission to the District of Columbia Bar, appellant was pursuing his own course of action during that period,

---

12. Appellant's assertion that he had no immediate supervisor with whom to file a formal grievance after Dr. Millard retired overlooks the fact that nothing in the regulations suggests that a change in supervisors will permit circumvention of the grievance procedures.

and after appealing prematurely to OEA, he entered into settlement discussions with a representative of the Acting Superintendent of Schools. There is nothing to show that he was prevented from filing a formal grievance at any time.[13]

Therefore, we find no error by OEA in concluding that it lacked jurisdiction to consider appellant's appeal because he had not exhausted his administrative remedies.

### C

Third, appellant contends that the trial judge erred when she found that the statement in Mr. Freeman's letter of June 17, 1988, to appellant that the May 31, 1988, settlement "offer [was] ... the final position of the school system" was not a final agency decision reviewable by the OEA. Appellant maintains that "[t]he Superintendent's letter was the result of three years of informal grievance requests made by [appellant] that DCPS ignored until the intervention of the OEA which statutorily required DCPS's response...." However, appellant here ignores his own admission that the letter was in response to an *informal* grievance procedure, and not the three-step formal grievance procedure that must be followed in order to obtain a final agency decision. *See* note 10, *supra.* Under OEA's regulations, only the written decision of the Superintendent at the conclusion of the three-step procedure can be considered the final agency decision. 5 DCMR § 806.8.

Undoubtedly, the delay and apparent confusion on appellant's part is unfortunate for a variety of reasons. But to excuse appellant from the requirement that he exhaust his administrative remedies in accordance with DCPS' regulations would be counterproductive. Appellant concededly did not follow any of the formal grievance procedures before filing his appeal with OEA. Once he was informed of the formal grievance procedures, he chose not to follow them. DCPS was thereby denied the opportunity to develop a factual record. *See C Street Tenants Ass'n. v. District of Columbia Rental Housing Comm'n*, 552 A.2d 524, 525 (D.C.1989); *O'Neill v. Starobin*, 364 A.2d 149, 153 (D.C.1976). Appellant's attempts to provide a record, through exhibits attached to his brief in this court and exhibits attached to his petition seeking review in the trial court, obviously will not suffice. *See* D.C.App.R. 16 (original papers and exhibits filed with agency constitute record on appeal; any material omissions or misstatements may be corrected only with permission of court); D.C.App.R. 10(e) (if a material matter is misstated or omitted from the trial court record, the court may direct that the omission be supplied or the misstatement corrected. If necessary, a supplemental record may be certified and transmitted by the Clerk of the Superior Court; all other questions as to the form and content of the record must be presented to the court).

Accordingly, because there is no basis on which to conclude that OEA's order, affirmed by the trial judge, was "arbitrary, capricious, or an abuse of discretion,"[14] *Stokes v. District of Columbia, supra*, 502 A.2d at 1010, we affirm the trial court's order of February 22, 1991.

---

**13.** The trial judge found that appellant "was on actual notice as early as October 27, 1987, that OEA did not have jurisdiction over his appeal since he had failed to receive a final Agency decision on his grievance."

**14.** Appellant's reliance on *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149, 87 S.Ct. 1507, 1515–16, 18 L.Ed.2d 681 (1967) (in deciding whether to undertake judicial review of agency action, court will evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration); *Ciba–Geigy Corp. v. Environmental Protection Agency*, 255 U.S.App.D.C. 216, 801 F.2d 430 (1986) (in determining finality of agency decision, courts will look primarily to whether the agency's position is "definitive" and whether it has a "direct and immediate effect on the day-to-day business" of the parties challenging the action) and *Industrial Safety Equip. Ass'n v. Environmental Protection Agency*, 267 U.S.App. D.C. 112, 837 F.2d 1115 (1987) (agency action is reviewable only where it imposes an obligation, determines a right or liability or fixes a legal relationship) is misplaced. These cases are factually distinguishable and legally unsupportive of appellant's position.