**Patricia A. KIDD, Appellant,**

v.

**DISTRICT OF COLUMBIA OFFICE OF EMPLOYEE APPEALS, Appellee.**

No. 93–CV–1103.

District of Columbia Court of Appeals.

Argued Sept. 25, 1996.

Decided Aug. 7, 1997.

Patricia A. Kidd, pro se. Gwendolyn R. Bennett, Washington, DC, filed a brief for appellant.

Martin B. White, Assistant Corporation Counsel, with whom Charles F.C. Ruff, Corporation Counsel at the time the brief was filed, and Charles L. Reischel, Deputy Corporation Counsel, were on the brief, for appellee.

Before TERRY and STEADMAN, Associate Judges, and MACK, Senior Judge.

STEADMAN, Associate Judge:

Patricia Kidd, an employee of the District of Columbia Department of Administrative Services (DAS), appeals from a Superior Court order affirming a decision of the Office of Employee Appeals (OEA) dismissing without prejudice her claim for a promotion to DS–12 and other collateral relief. The OEA decision was affirmed by the Superior Court without a hearing pursuant to

D.C.Code § 1–606.3(d) (1992). On appeals of such rulings to us, "our scope of review is precisely the same as that which we employ in cases that come directly before this court." *Stokes v. District of Columbia*, 502 A.2d 1006, 1010 (D.C.1985). Because we are unable to reconcile the decision of the OEA with that of the Administrative Judge who first heard the case, we remand the case to the OEA for further consideration.

This matter has a long history and involves an unusual interplay between court litigation and administrative procedures. Briefly put, Ms. Kidd was the victim of egregious sexual harassment and retaliation by her immediate supervisor, Melvin Carter, at DAS during 1987 and early 1988.[1] In May 1988, Ms. Kidd filed a formal grievance with her agency. This grievance was internally appealed to the head of DAS in July 1988. The appeal to the head of DAS was never acted upon. In October 1988, Ms. Kidd appealed the formal grievance to the OEA and added a claim that she should be promoted to DS–11.[2]

While her grievance was pending at OEA, Ms. Kidd filed a lawsuit in Superior Court against Carter, his supervisor Robert King, and the head of DAS Raymond Lambert. She was awarded a substantial jury verdict, most of which we affirmed on appeal. *See King v. Kidd, supra* note 1.[3] Following the jury verdict, the Superior Court ordered that Ms. Kidd be retroactively promoted to DS–11, but left further promotion to DS–12 and other collateral matters to the administrative processes, specifically mentioning the "OEA mechanisms." [4]

After the trial, Ms. Kidd's counsel sent OEA a letter dated November 6, 1990, indicating that "[t]he only issue left in this grievance is the issue of whether Ms. Kidd was wrongfully denied a promotion to DS–12." [5] However, the record also contains a subsequent *pro se* "motion to reopen the record and levy sanctions" filed August 2, 1991. In that motion, Ms. Kidd pointed out that the record had not yet been officially closed,[6] that the trial judge had referred her back to the OEA on the DS–12 promotion matter, made arguments why she should receive that promotion, and asked in addition for collateral relief on eleven other matters which she specifically listed.[7]

---

1. A full recitation of the facts of Ms. Kidd's harassment and subsequent retaliation is contained in our opinion in *King v. Kidd*, 640 A.2d 656, 659–61 (D.C.1993).

2. If a final grievance is not acted upon within sixty days, it becomes a final denial and is appealable to the OEA. 34 D.C.Reg. 1845, 1883 (1987).

3. The jury found Carter liable on a sexual harassment claim and on a claim for intentional infliction of emotional distress, and King and Lambert liable on the latter claim. The jury awarded Kidd $258,000 in compensatory damages, some $40,000 in punitive damages, and over $100,000 for attorney's fees and expenses. *King, supra,* 640 A.2d at 659. We sustained King's liability, but reversed the jury award with respect to Lambert, holding that his neglect was not so extreme and outrageous as to permit recovery on such a claim. Carter's separate appeal was dismissed by this court when he failed to file any brief.

4. The transcript, presumably in error, uses the initials "OEO."

5. The record also contains a May 24, 1991 letter from Ms. Kidd's counsel indicating that promotion to DS–12 was the only relief sought, but this letter is not mentioned by either the Administrative Judge or the OEA.

6. The record was closed on January 13, 1992.

7. Those eleven matters sought in collateral relief were listed as follows:

[1]. Reimbursement for any annual and sick leave taken as a result of filing the grievance and retaliations;

[2]. Executed personnel action to correct the questionable August 9, 1989 reassignment;

[3]. Outstanding appraisals for 1988, 1989, 1990, and 1991;

[4]. Credit for the higher level of performance and accomplishments which have had positive impacts for the department and district government;

[5]. An opportunity for a fresh start through a reassignment to a position in another agency which will be exempted from the modified rif [sic] and bumping under the emergency personnel act;

[6]. A letter from the Director or official of authority, rescinding the letter of direction;

[7]. Protection from future reprisals and retaliation;

[8]. Correction to my annual and sick leave balances;

[9]. Attorney's fees;

[10]. Training, counseling and disciplinary action for those agency employees who unawarely [sic] violated my rights to file an action without retaliation, those in responsibility

The OEA Administrative Judge dismissed Ms. Kidd's appeal without prejudice on January 13, 1992. The Administrative Judge held that OEA lacked jurisdiction over the DS–12 claim because it had never been the subject of a final agency decision as required by D.C.Code § 1–606.3(a) (1992). With respect to the collateral claims, the Administrative Judge made special note of Ms. Kidd's submission of August 2, 1991, and restated almost *in haec verba* the first nine of those grievances. *See* note 7 *supra*.[8] The Administrative Judge refused to rule on these collateral grievances on the same ground as she disposed of the DS–12 claim: that there had been no final agency action on the grievances.[9] Ms. Kidd appealed this decision to the full OEA.

 The full OEA affirmed holding that the Administrative Judge properly found no OEA jurisdiction on the DS–12 claim. As to the collateral claims, the full OEA, advancing a different rationale, quoted the sentence from counsel's letter of November 6, 1990 set forth *supra*, and stated: "[t]he examiner obviously viewed this statement as a withdrawal of all other claims before the Office. We see no error in the examiner's decision to treat these claims as abandoned."[10]

We are perplexed by this OEA reasoning with respect to the collateral claims. As we read the decision of the Administrative Judge, she clearly treated the collateral claims as having been presented to her. The opinion made particular reference to the claims set forth in the "Motion to Reopen the Record" of August 2, 1991, which was filed after the communications from Ms. Kidd's attorney, and, by every evidence, granted this motion to reopen the record and make the assertions contained therein. The Administrative Judge dismissed Ms. Kidd's collateral claims not because of any "abandonment" of such claims, but rather because, in her view, DAS was not afforded an opportunity to review the claims and there was, therefore, no final agency decision from which Ms. Kidd could appeal to the OEA.[11]

It does not appear, therefore, that the "abandonment" ground upon which the OEA dismissed the collateral claims can be sustained on the record before us. The consequence of such a ground of affirmance would be that Ms. Kidd had forever lost the opportunity to have those claims reviewed on their merits. Such a substantive review has never been undertaken by any tribunal. Whether the Administrative Judge was correct in ruling that all of these collateral claims lacked final agency action before being presented to the OEA is a determination which the OEA had no occasion to review, given its alternative basis for dealing with those collateral claims. In such circumstances, we think the appropriate course of action is to remand to

who didn't take corrective action, and those reprisals and retaliations (OPTIONAL AS YOU DEEM APPROPRIATE); and

[11]. Any other relief or corrective action OEA deems appropriate.

8. The Administrative Judge also referred to "Employee's Supplemental Submission dated February 20, 1991." That document is not in the record before us, but the Administrative Judge quoted five collateral issues contained therein which appear to duplicate ones contained in the later submission of August 2, 1991.

9. The Administrative Judge stated: "[T]his petition is dismissed without prejudice so that Employee might refile upon exhaustion of Agency's internal grievance procedures. This petition is dismissed without prejudice since it appears that Agency employees from whom Employee may have sought information pertaining to grievance rights may not have provided adequate information concerning the informal and formal griev-

ance proceedings with regard to the issues raised in Employee's subsequent filings."

10. The OEA added: "Nor does Employee assert any such error." As indicated, we do not read the Administrative Judge's decision as resting on that ground and in such circumstances, there would not seem to have been any occasion for Kidd to have claimed error in that regard before the OEA.

11. It is true that in an early part of the decision reciting the "Procedural History," the Administrative Judge quoted from Kidd's counsel's letter of November 6, 1990, and underlined the portion dealing with the only remaining issue as that of the DS–12 promotion. However, as indicated, when discussing the collateral claims themselves in the "Analysis and Conclusion" section, no mention is made of any abandonment but instead the claims are disposed of on the ground of lack of final agency action.

the OEA for further consideration.[12]

Turning then to the issue of whether Ms. Kidd raised her claim for promotion to DS–12 before DAS, in some rare instances of "compelling circumstances" OEA jurisdiction is proper even when there has been no final agency decision because pressing a grievance within the agency would be futile. *Bufford v. District of Columbia Public Schools,* 611 A.2d 519, 523–24 (D.C.1992). Ms. Kidd urges that this is the situation with respect to her DS–12 claim, citing the history of hostility and the interplay with the court's ruling in her civil case.[13] The record before us does not indicate that this argument was raised below; Ms. Kidd represented at oral argument that it was. In any event, in light of our decision to remand for further consideration of the collateral claims, as to which a similar argument may be relevant, we see no reason not to remand the DS–12 claim as well for appropriate further consideration.[14]

For the foregoing reasons, the judgment appealed from is reversed. The case is remanded to the OEA for further proceedings consistent with this opinion. *See Council of District of Columbia v. Clay,* 683 A.2d 1385, 1393 & n. 15 (D.C.1996).

*So ordered.*

---

12. We note also an apparent contradiction between the Administrative Judge's holding that none of Kidd's collateral claims had been raised before the agency and the statement in the OEA decision that in her original appeal filed on October 13, 1988, Kidd "reiterated the complaints she raised during Agency's grievance process."

13. Kidd argues also that principles of res judicata and collateral estoppel bind the agency in certain regards with respect to her various claims. She asserts that this may explain her counsel's ambiguity in the letters to the Administrative Judge as to what issues were still "left in this grievance." We take no position with respect to these assertions without further OEA consideration.

14. We take no position as to the effect of the passage of time on Kidd's ability to press these grievances at the agency level, if such need be the case to preserve OEA jurisdiction.