William F. STOKES, Jr., Appellant,

v.

DISTRICT OF COLUMBIA, Appellee.

No. 84–952.

District of Columbia Court of Appeals.
Argued May 14, 1985.
Decided Dec. 20, 1985.

**51.** *See* notes 38 and 39, *supra,* and accompanying text.

James A. Price, Washington, D.C., for appellant.

Edward E. Schwab, Asst. Corp. Counsel, with whom Inez Smith Reid, Corp. Counsel, John H. Suda, Principal Deputy Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on brief, for appellee.

Before PRYOR, Chief Judge, and NE-BEKER and TERRY, Associate Judges.

TERRY, Associate Judge:

Appellant was fired by the District of Columbia Department of Corrections on charges of job-related misconduct. In accordance with his rights under the District of Columbia Merit Personnel Act of 1978, D.C.Code §§ 1–601.1 through 1–637.2 (1981), appellant filed a petition for review with the District of Columbia Office of Employee Appeals (OEA) contending, *inter alia,* that the Department's decision to fire him was unjustified. The OEA agreed and reinstated him. On review, the Superior Court reversed the OEA's decision, concluding that the Department's decision to fire appellant was reasonable and that the OEA had abused its discretion in ordering his reinstatement. We affirm the court's ruling.

I

Appellant was an electrical foreman at Youth Center I, a correctional institution for juveniles operated by the Department of Corrections in Lorton, Virginia. In June 1981 the Assistant Director of the Department instituted adverse action proceedings against him. In accordance with procedural requirements, *see* D.C.Code § 1–617.3 (1981), the Assistant Director notified appellant that he was charged with violating four of the Department's regulations and that he had made a tentative decision to dismiss him from the Department.[1] He

---

1. Appellant was charged with violating the following regulations:

1.1. *Operational Knowledge Required.* Employees are required to have a complete understanding of their Position Descriptions and all Regulations, Rules, Policies and Procedures pertaining to the Department and their Division, Service and Unit, and to comply therewith. Employees are held responsible for the understanding and compliance with all documents posted on official bulletin boards.

1.2. *General Conduct.* Employees are required to preserve a gentlemanly or lady-like demeanor and to comport themselves in such

a manner as to avoid criticism of themselves or the organization of which they are a part.

1.5. *Cooperation.* It is required and constitutes a condition of employment that all personnel maintain toward their fellow employees considerate, cooperative and good-mannered relations. All employees are required to support Department policy by act and attitude.

1.23. *Relationships with Inmates—Security and Discipline.* Employees are required to maintain the security, decorum and discipline of inmates who are under their direct supervision or who frequent the area of their assign-

explained the basis for the charges and informed appellant that, in determining the appropriate sanction, the Department would take into consideration his prior disciplinary record.[2]

Appellant requested, and was granted, an opportunity to discuss the charges with the Director of the Department. The Director reviewed appellant's case, concluded that dismissal was warranted, and notified appellant of his decision. Appellant filed a petition for review with the OEA, contending that the sanction imposed by the Department was "too severe."[3] The Department disputed appellant's contention and proffered documents to support its charges.

As the documents proffered by the Department revealed, there were three separate incidents which gave rise to the charges. The first incident occurred in March 1981 when employees of the Department discovered approximately seventy pounds of meat in a refrigerator in appellant's workshop. After an investigation revealed that the meat had been stolen from the Youth Center's culinary unit, appellant—according to the Department—admitted that he knew the meat had been stolen, claimed that it had been stolen by inmates in the institution, and refused to reveal the names of the inmates. The Department asserted that this constituted a violation of Regulations 1.1 and 1.23.

The second incident occurred in April 1981 while officials were conducting disciplinary proceedings involving an inmate who worked for appellant. According to the Department, appellant "barged" into the hearing room and interrupted the proceedings, asking the officials:

What do you think you are doing to my man? He did not do anything but hurt someone's feelings. Why are you locking him up? I can't do my work without him.

The officials explained that the inmate had committed a serious offense and asked appellant to leave the hearing room. Appellant refused to leave and continued to badger the officials about their decision. The Department asserted that this constituted a violation of Regulation 1.2.

The third incident occurred in May 1981 when appellant escorted an inmate to a service station—an unauthorized area for inmates—to help him repair his car. When asked by his supervisor whether he had in fact taken the inmate to the service station, appellant refused to answer and became loud and abusive. The Department asserted that this constituted a violation of Regulations 1.2 and 1.5.

Appellant conceded that he had failed to inform his supervisors that someone had stolen the meat, but he claimed that he did not know who the culprits were. He suspected that some of the inmates had taken it, however, and ordered those who he thought were responsible to return it. He also admitted that he had taken an inmate to an unauthorized area. Although he asserted that he had not "interrupted" the disciplinary proceedings, he acknowledged that he had challenged the officials' decision to discipline one of the inmates. Appellant nonetheless contended that his conduct did not warrant dismissal, which he maintained was inconsistent with past practices and with the Table of Penalties set forth in Departmental Order 3310.2 (1973).[4]

---

ment, including search of their persons as prescribed.

**2.** Appellant had previously been suspended for refusing to obey an order of a superior officer in violation of Regulation 1.3.

**3.** Appellant also contended that the Department's action was racially motivated. The OEA,

however, lacked jurisdiction to consider this contention. *See* Equal Employment Opportunity Rules § 123.1, 31 D.C.Reg. 79 (1984).

**4.** The Table of Penalties provides in pertinent part:

A hearing examiner from the OEA sustained four of the five charges. He found that appellant knew the meat in his refrigerator had been stolen and that he failed to confiscate it or to report it to his supervisor as required. Consequently, the examiner concluded that appellant violated Regulation 1.1 "inasmuch as he failed to comply with the [Department's] procedure pertaining to the reporting of contraband," as well as Regulation 1.23 "inasmuch as [his] decision not to take immediate action regarding the stolen food constituted a failure to maintain the discipline of inmates who were under his direct supervision." The examiner also found that appellant escorted an inmate to an unauthorized area, and that when his supervisor questioned him about the incident, he became "offensive and belligerent...." Hence the examiner determined that appellant also violated Regulation 1.2 "inasmuch as [he] failed to conduct his affairs in a gentlemanly manner," as well as Regulation 1.5 "inasmuch as he failed to maintain a considerate and good mannered relationship toward a fellow employee." Finally, the examiner concluded that appellant "has had serious difficulty conforming to [the Department's] Basic Regulations, ... has exhibited a belligerent attitude toward authority, and has chosen to disregard [the Department's] regulations without consideration of the consequences of his actions."

Despite these conclusions, the examiner ruled that appellant should only be suspended for sixty days and then reinstated, holding that the Department had failed to make a satisfactory showing that the sanction it had imposed—dismissal—"reflect[ed] the severity of the infraction[s]" as mandated by D.C.Code § 1–617.1(b) (1981). The grounds which the examiner gave for his decision were (1) that the Department "went beyond the sanctions specified in the Table of Penalties without having obtained the express consent of [the] Director as required by Departmental Order 3310.2"; (2) that the Department had refused to proffer additional evidence to support its charge that appellant had interrupted disciplinary proceedings; and (3) that the Department had failed timely to comply with his order to submit a "concise explanation ... as to why removal, rather than a suspension, was warranted." A reviewing panel of the OEA held that the examiner erred in concluding that the Department had refused to proffer additional evidence to support its charge that appellant had interrupted disciplinary proceedings, but nevertheless adopted the examiner's recommended sanction of a sixty-day suspension.

Pursuant to D.C.Code § 1–606.3(d) (1981), the Department filed a petition for review in the Superior Court, contending that its decision to dismiss appellant was reasonable and that the OEA had exceeded its authority by reinstating him. The court agreed and reversed the OEA's decision. This appeal followed.

## II

■ The Merit Personnel Act was enacted to establish a comprehensive merit-based personnel system for employees of the District of Columbia. In order to ensure compliance with the merit system principles set forth in the Act, its drafters created the OEA, a quasi-judicial body empowered to review final agency decisions affecting, *inter alia*, performance ratings, adverse actions, and employee grievances. *See* D.C.Code §§ 1–606.1, 1–606.3 (1981). Although the Act does not define the stan-

| REGULATION | | FIRST OFFENSE | SUBSEQUENT OFFENSE |
|---|---|---|---|
| 1.1. | Operational Knowledge Required | Verbal warning to 5 days | 5 to 30 days |
| 1.2. | General Conduct | Verbal warning | 5 to 30 days |
| 1.5. | Cooperation | Reprimand to 3 days | Reprimand to 15 days |
| 1.23. | Relationships with Inmates | 5 to 15 days | 10 days to removal |

The sanctions listed in this table "are to be utilized *unless* the Director [of the Department] expressly states otherwise as a result of his personal review of the case." Departmental Order 3310.2(4)(c) (emphasis added).

dards by which the OEA is to review these decisions, it is self-evident from both the statute and its legislative history that the OEA is not to substitute its judgment for that of the agency and that its role, like that of its federal counterpart, the Merit Systems Protection Board, is simply to ensure that "managerial discretion has been legitimately invoked and properly exercised." *Douglas v. Veterans Administration,* 5 M.S.P.B. 313, 328, 5 M.S.P.R. 280, 301 (1981) (footnote omitted). Indeed, the OEA's own regulations state that it will uphold an agency decision unless (1) it is unsupported by substantial evidence, (2) there was harmful procedural error, or (3) it was not in accordance with law or applicable regulations. OEA Proposed Regulations §§ 614.2, 614.5, 27 D.C.Reg. 4361–4362, *adopted as final,* 27 D.C.Reg. 5449 (1980).

■ Although review of the OEA's decision in this case was initially in the Superior Court, D.C.Code § 1–606.3(d) (1981), our scope of review is precisely the same as that which we employ in cases that come directly before this court. *See Kegley v. District of Columbia,* 440 A.2d 1013, 1018–1019 (D.C.1982). Thus we must examine the administrative record to determine whether there has been procedural error, whether there is substantial evidence in the record to support the OEA's findings, or whether the OEA's action was in some manner arbitrary, capricious, or an abuse of discretion.[5] D.C.Code § 1–1510 (1981); *Barry v. Wilson,* 448 A.2d 244, 246 (D.C. 1982); *Kegley v. District of Columbia, supra,* 440 A.2d at 1019; *see Barry v. Holderbaum,* 454 A.2d 1328, 1332 (D.C.1982).

The OEA reinstated appellant because in its judgment the Department of Corrections "failed to meet its burden of persuasion that the penalty of removal was warranted." Its decision was based, in part, on the hearing examiner's finding that the

Department "went beyond the sanctions specified in the Table of Penalties without having obtained the express consent of [the] Director [of the Department] as required by Departmental Order 3310.2." This, however, is simply not true. The record clearly reveals that the Director personally reviewed appellant's case and determined that dismissal was justified. The trial court was entirely correct in stating that the Department "did comply with the relevant standards for imposing a greater penalty than that suggested by the penalty guidelines."

■ Moreover, the record supports the Director's conclusion. As the Department alleged, and as the hearing examiner found, appellant (1) failed to report that inmates under his supervision had attempted to steal approximately seventy pounds of meat from the institution, (2) escorted an inmate to an unauthorized area, (3) addressed a supervisor in an offensive and belligerent manner, and (4) had previously been reprimanded and suspended for refusing to obey an order of a superior officer. Given these facts and the nature of the institution at which appellant was employed, we hold that the OEA's conclusion that the Department failed to demonstrate that dismissal was an appropriate sanction was arbitrary and capricious, and that its decision to reinstate appellant constituted an abuse of discretion.

■ The OEA itself recognized in *Employee v. Agency,* 29 D.C.Reg. 4565, 4570 (1982):

Review of an Agency imposed penalty is to assure that the Agency has considered the relevant factors and has acted reasonably. Only if the Agency failed to weigh the relevant factors or the Agency's judgment clearly exceeded the limits of reasonableness, is it appropriate for this Office to specify how the Agen-

---

5. We note that the United States Court of Appeals for the Federal Circuit follows the same standard in reviewing decisions of the Merit Systems Protection Board. 5 U.S.C. § 7703(c) (1982); *see Nagel v. Department of Health and Human Services,* 707 F.2d 1384, 1387 (Fed.Cir. 1983).

cy's penalty should be amended. This office is guided in this matter by the principles set forth in *Douglas v. Veterans Administration, [supra]*.

Although the OEA has a "marginally greater latitude of review" than a court, it may not substitute its judgment for that of the agency in deciding whether a particular penalty is appropriate. *Douglas v. Veterans Administration, supra,* 5 M.S.P.B. at 327–328, 5 M.S.P.R. at 300. The "primary discretion" in selecting a penalty "has been entrusted to agency management, not to the [OEA]." *Id.* at 328, 5 M.S.P.R. at 301.

> Selection of an appropriate penalty must ... involve a responsible balancing of the relevant factors in the individual case. The [OEA's] role in this process is not to insist that the balance be struck precisely where the [OEA] would choose to strike it if the [OEA] were in the agency's shoes in the first instance; such an approach would fail to accord proper deference to the agency's primary discretion in managing its workforce. Rather, the [OEA's] review of an agency-imposed penalty is essentially to assure that the agency did conscientiously consider the relevant factors and did strike a responsible balance within tolerable limits of reasonableness. Only if the [OEA] finds that the agency failed to weigh the relevant factors, or that the agency's judgment clearly exceeded the limits of reasonableness, is it appropriate for the [OEA] then to specify how the agency's decision should be corrected to bring the penalty within the parameters of reasonableness.

*Id.* at 332–333, 5 M.S.P.R. at 306. *See also Villela v. Department of the Air Force,* 727 F.2d 1574, 1576 (Fed.Cir.1984).

Because the OEA exceeded its proper scope of review in determining that appellant's misconduct did not warrant dismissal, we affirm the order of the Superior Court which set aside the OEA's decision.

*Affirmed.*