## DISTRICT OF COLUMBIA METROPOLITAN POLICE DEPARTMENT, Appellant,

v.

## Keith PERRY, et al., Appellees.

### No. 91–CV–528.

District of Columbia Court of Appeals.

Argued May 28, 1993.
Decided March 17, 1994.

STEADMAN, Associate Judge:

In this appeal, we are called upon to review a decision of the Office of Employee Appeals ("OEA") relating to the interrelation of two statutes both potentially applicable to disciplinary actions taken against police officers as a result of citizen complaints.

The Comprehensive Merit Personnel Act ("CMPA"), D.C.Code §§ 1–601.1 to –637.2 (1992 & 1993 Supp.), is a broad-ranging statute which sets forth a comprehensive system of personnel management for the government of the District of Columbia. With certain enumerated exceptions, it applies to all employees of the District, including police officers. D.C.Code § 1–602.1(a) (1992). The CMPA and its implementing regulations guarantee certain rights to an employee before the employee may be subject to job discipline. Included among these guarantees are the right to notification of the charge against the employee and the proposed disciplinary action, and the right to a certain period of time in which to respond to such charge and proposed action.

The Civilian Complaint Review Board Act ("CCRB Act"), D.C.Code §§ 4–901 to –911 (1988 & 1993 Supp.), enacted subsequent to the enactment of the CMPA, provides a unique system for the discipline of police officers for conduct brought to the attention of the police department through citizens' complaints. The Civilian Complaint Review Board ("CCRB") investigates the complaint and makes a recommendation to the Chief of Police. While the CCRB Act provides the officer with the opportunity to respond to the initial allegations, it does not include a mechanism whereby the officer can respond to the proposed disciplinary action.

Before us in a broad sense is the issue whether, and to what degree, the provisions of the CCRB Act supersede the provisions of the CMPA. More particularly in dispute is whether the provisions of the CMPA that provide for notice of and an opportunity to respond to the proposed disciplinary action are superseded by the CCRB Act. We affirm the decision of the Office of Employee Appeals, as herein interpreted, reconciling the provisions of those two acts.

Edward E. Schwab, Asst. Corp. Counsel, with whom John Payton, Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, DC, were on the brief, for appellant.

Robert E. Deso, Washington, DC, for appellees.

· Before STEADMAN, FARRELL and KING, Associate Judges.

## I.

Before discussing the legal issues involved in this appeal, we recount the statutory provisions involved as they existed at the time of these proceedings, as well as the litigation history that brought these issues before this court.

## A. CMPA

The District of Columbia Council enacted the CMPA in 1979[1] to "assure that the District of Columbia government shall have a modern flexible system of public personnel administration." D.C.Code § 1–601.2(a) (1992). The CMPA provides that an employee within the scope of the CMPA shall have adverse action taken against him or her only for cause[2] and only after certain procedures are first completed. An adverse action is defined as a suspension of more than thirty days, a reduction in rank or pay, or a removal from employment. Id. § 1–617.1(b). The statute authorizes the Mayor to issue "rules and regulations establishing internal agency corrective, rather than punitive, measures.... [and to provide for] reprimands and for suspensions for 30 days or less." Id. § 1–617.1(a). Pursuant to this authorization, the Office of Personnel issued extensive regulations. See Personnel Reg. §§ 1600.1–1608.6, 30 D.C.Reg. 5874 (1983).[3]

Corrective[4] or adverse actions must be initiated within forty-five days (excluding Saturdays, Sundays, and holidays) from "the date the agency knew or should have known" of the act or occurrence allegedly constituting cause. D.C.Code § 1–617.1(b–1)(1). When an agency proposes a corrective action, the employee must be given written notice stating "any and all causes for which the employee is charged, and the reasons, specifically and in detail, for the proposed action; and final action shall not become effective during that period." Personnel Reg. § 1604.7. The employee is entitled to at least ten days in which to answer the notice of proposed action, either orally or in writing or both, and to furnish affidavits or other documentary evidence in support of such answer. Id. §§ 1604.12, 1604.14.

The proposed action and the employee's answer, if there is one, must be reviewed by the disinterested designee of the agency head prior to final action. Id. § 1604.16.[5] "Examination of witnesses, a trial, or a hearing is not required, but may be provided at the discretion of the individual or individuals who are responsible for handling the adverse actions." D.C.Code § 1–617.3(a)(2) (1992). The deciding official may sustain the penalty proposed, reduce it, or dismiss the action with or without prejudice, but may not increase the proposed penalty. Personnel Reg. § 1604.35. The decision of the deciding official shall be rendered no more than forty-five days from the date of delivery of the notice of proposed action,[6] D.C.Code § 1–617.3(a)(1)(D); Personnel Reg. § 1604.38, and "shall be the final agency decision for the

---

1. The provisions of the CMPA became effective at various times in 1979 and 1980. D.C.Code § 1–637.1 (1992). Of particular importance for this opinion, §§ 1–606.1 to –606.11 and §§ 1–617.1 to –617.3 became effective on December 2, 1980. D.C.Code § 1–637.1(i); 27 D.C.Reg. 4347 (1980).

2. The CMPA set out twenty-one grounds that constitute "cause," which have since been expanded to twenty-two. D.C.Code § 1–617.1(d) (1992).

3. Those regulations, in effect at the time of the disciplinary actions at issue in this appeal, have since been superseded by regulations published at 34 D.C.Reg. 1845 (1987) and 37 D.C.Reg. 8297 (1990).

4. A corrective action is defined as a "reprimand or suspension of thirty (30) days or less for cause." Personnel Reg. § 1601. The grounds

for cause set out in D.C.Code § 1–617.1(d), see note 2 supra, are incorporated as the definition of cause for corrective actions as well, except for one ground which was added and one which was amended after the latest regulations were issued. Personnel Reg. § 1604.3. This appeal involves only corrective actions; each of the recommended disciplinary actions was either a reprimand or a suspension of less than thirty days.

5. The disinterested designee is usually the deciding official as well. Personnel Reg. § 1604.19. Further provisions spell out who may be the deciding official and the responsibilities of the "disinterested designee." Id. §§ 1604.17–.25.

6. This period may be extended when the employee requests and is granted an extension of time for answering the notice of proposed action or agrees to an extension of time requested by the agency. Personnel Reg. § 1604.38.

purpose of appeal." Personnel Reg. § 1604.-33. An appeal from the final agency decision may be made to the OEA. D.C.Code § 1–617.3(b).[7]

## B. CCRB Act

The District of Columbia Council adopted the CCRB Act in 1980, effective October 1, 1981, in response to legislative findings that the Metropolitan Police Department ("MPD") had not adequately responded to citizens' complaints against police officers. The CCRB Act provides a mechanism for public participation in the review of allegations of misconduct by police officers. The CCRB Act established a seven-member board[8] and gave the board exclusive jurisdiction over citizens' complaints against police officers in three areas: "(1) Police harassment; (2) Excessive use of force; [and] (3) Use of language likely to demean the inherent dignity of any person to whom it was directed and to trigger disrespect for law-enforcement officers." D.C.Code § 4–901(c), –903(a) (1988).[9] The MPD and the Mayor are "prohibited from maintaining any system other than that set forth" in the CCRB Act for the processing of civilian complaints in these three areas. D.C.Code § 4–909(c) (1988).

Within thirty days of the submission of the complaint the CCRB is to set the time and place for a hearing, unless the complaint is frivolous on its face. D.C.Code § 4–905(a) (1988); 6A DCMR § 2108.1 (1988).[10] The accused officer must be given "sufficient opportunity to respond to allegations in [the] complaint," D.C.Code § 4–905(a), and must be given notice of the hearing at least fifteen days prior to the commencement of the hearing. 6A DCMR § 2109.1. The Executive Director of the CCRB shall, at the direction of the CCRB, conduct an investigation of the complaint, including the interviewing of witnesses and police personnel, and a written report explaining the results of such investigation shall be filed with the CCRB and served on every party before the hearing. D.C.Code § 4–905(a). The decision of the CCRB must be based on the exclusive record developed in the investigation and at the hearing. Id. § 4–905(c).[11]

The CCRB must determine in each case whether the complaint "should be sustained,

---

7. The regulations provide that:

> Any system for grievance resolution, or for corrective or adverse actions, involving uniformed members of the Metropolitan Police Department or of the Fire Department provided for by law or by regulations of the respective departments in effect on the effective date of these regulations, including but not limited to procedures involving trial boards, shall take precedence over the provisions of this chapter to the extent that there is a conflict.

Personnel Reg. § 1600.5.

8. The seven-member board had the following composition: one chairperson, who must be a member of the District of Columbia Bar, appointed by the Mayor; one member appointed by the recognized bargaining agent for the majority of the uniformed MPD employees; one member appointed by the Chief of the MPD; two citizen members appointed by the Mayor; and two citizen members appointed by the Council of the District of Columbia. D.C.Code § 4–904 (1988).

Emergency legislation amending the CCRB Act was enacted in 1992. D.C.Act No. 9–274, 39 D.C.Reg. 5846 (1992). That legislation provided for an expansion of the CCRB to twenty-one members and made various other changes. Non-emergency legislation to that effect was enacted in 1993. See D.C.Code § 4–904(a–1) (1993 Supp.).

9. An exception was made for complaints in which the record indicates to the CCRB "any probability that the alleged misconduct was criminal in nature." D.C.Code §§ 4–902(a), –903(a), –903(d). Such cases are referred to the United States Attorney's Office for investigation and possible prosecution. Id. § 4–903(d).

10. In March of 1993, the complaint process of the CCRB was made more flexible in an effort to increase its efficiency and reduce the significant backlog of cases. D.C.Law 9–179, § 2(b), 39 D.C.Reg. 8075 (1993) (codified at D.C.Code § 4–905 (1993 Supp.)); see Cox v. District of Columbia, 821 F.Supp. 1, 6–9, 15–16 (D.D.C.1993) (detailing the backlog of cases and what the court found to be the "CCRB's consistent and utter failure to abide by statutory deadlines for hearing cases"); COUNCIL OF THE DISTRICT OF COLUMBIA, REPORT ON THE D.C. CIVILIAN COMPLAINT REVIEW BOARD AMENDMENT ACT OF 1992 (1992) (discussing the need for changes in the process). Now the CCRB is authorized to resolve complaints through conciliation, or investigation and summary adjudication, as well as investigation and a hearing. D.C.Code § 4–905(a) (1993 Supp.).

11. Procedures for the investigation, hearing, and disposition of complaints are set forth in 6A DCMR §§ 2105–2117, now §§ 2105–2119 as amended by 40 D.C.Reg. 2926 (1993).

dismissed, or found to evidence misconduct not directly related to the immediate complaint but within the authority of the [CCRB]." *Id.* § 4–902(a) (1988).[12] "The [CCRB] shall be empowered to recommend [in writing] personnel actions against officers involved in misconduct.... [and] shall recommend actions to be taken by the Chief" of the MPD. *Id.* § 4–902(a), (b).

The Chief of the MPD is required to act within thirty days of the CCRB recommendation, and a "[f]ailure to act within 30 days shall be deemed final action by the Chief of the [MPD] ratifying the findings and recommendations of the [CCRB]." *Id.* § 4–903(c). Within thirty days after receiving the CCRB's recommendation, the Chief may "(1) [i]mplement or otherwise issue a final order with respect to such recommendations; or (2) refer the matter to a police trial board." *Id.* § 4–903(c). If the Chief disagrees with the CCRB's recommendation, the Chief's written recommendation and reason therefor and the CCRB's findings and recommendation shall be submitted to the Mayor, who then has thirty days in which to either uphold the recommendation of the Chief, impose the recommendation of the CCRB, or order a compromise between the two. *Id.* § 4–902(c) (1988). If the Mayor fails to act within thirty days, the recommendation of the Chief becomes final. *Id.* If the Chief decides to implement the CCRB's decision or to refer the matter to a trial board, that decision is final, *id.* §§ 4–902(c), –903(c), "[p]rovided, that, all rights provided by [the CMPA] as amended by this chapter, including the right to appeal before the [OEA] and the right to a trial board hearing prior to dismissal[,] are maintained." *Id.* § 4–902(c) (1993 Supp.). A final decision, other than referral to a police

trial board, by the Chief or the Mayor may be appealed to the OEA.[13] *Id.* § 4–903(c).

## C. Procedural Background

Pursuant to the CCRB Act, citizens' complaints were filed with the CCRB in the years 1982–1986 [14] against fourteen members of the MPD.[15] The CCRB conducted an investigation and held a full hearing in each case and then issued written decisions finding that each police officer had engaged in conduct prohibited by the CCRB Act and recommending that the MPD impose minor discipline in each of the cases, ranging from a reprimand to a suspension of ten days. In eight of the fourteen cases, the Chief of Police concurred with the CCRB's recommendations and disciplined each officer accordingly. In one case, the Chief recommended the same discipline but disagreed with the CCRB's charges and the Mayor sustained the Chief's recommendation. In three of the cases, the Chief recommended a decrease in the discipline recommended by the CCRB, and referred the cases to the Mayor. Out of those three cases, the Mayor sustained the Chief's recommendation in one and sustained the CCRB's recommendation in the other two. The Chief recommended an increase in the discipline proposed by the CCRB in one case, and the Mayor sustained the Chief's recommendation. In the final case, the Chief recommended a decrease in the discipline proposed by the CCRB, but did not submit his written recommendation to the Mayor within the thirty-day time period proscribed by the CCRB Act, so the CCRB's recommendation was imposed.

Each police officer appealed separately to the OEA, contending that the disciplinary action was invalid because the MPD had imposed it without complying with the proce-

**12.** The CCRB shall make this decision by a preponderance of the evidence. D.C.Code § 4–905(b) (1988).

**13.** The CCRB Act provides that it "shall be deemed to supersede and repeal any and all provisions of law or administrative orders enacted or promulgated prior to October 1, 1981, which are inconsistent or conflict with any provision of" the CCRB Act D.C.Code § 4–910 (1988).

**14.** The dates of four of the complaints do not appear in the record, but in three of those cases

the employees were notified of or responded to the complaints in 1984. The fourth case mentions only that the MPD's action after investigation and recommendation by the CCRB and the Chief became effective May 11, 1986.

**15.** The complaints were separately filed. They were later consolidated in the OEA Order and Opinion issued on August 8, 1989, see page [1144] *infra,* because the OEA determined that they presented the same issues for review.

dures set forth in the CMPA which must be followed by the agency. In particular, the officers argued that they were denied the notice of and opportunity to respond to the proposed discipline guaranteed to them, like all nonexempt government employees, pursuant to the CMPA. In opposition to these appeals, the MPD argued in each case that the CCRB Act specifically amended the CMPA and that the procedures established by the CCRB Act provided that the MPD was to implement disciplinary action in cases within the scope of the CCRB Act without regard to the requirements governing personnel disciplinary actions imposed upon agencies by the CMPA.

The hearing examiners assigned to the officers' appeals recommended reversal in each case.[16] They ruled that the MPD had violated the CMPA by imposing discipline without providing each employee an opportunity to respond to the final decision-maker about the proposed action against him. The MPD filed petitions for review before the full OEA board, asserting that the initial decisions were based on an erroneous interpretation of the law. The OEA consolidated all of the cases for the purpose of review.

On August 8, 1989, the OEA issued an Opinion and Order in which it denied the petitions for review and affirmed the decisions of the hearing examiners. The OEA board ruled that the CCRB Act procedures were not irreconcilably in conflict with the notice and comment provisions of the CMPA, and that the latter, therefore, must also be followed. The time periods otherwise required under the CMPA were reduced by the OEA so that the adverse or corrective actions would be completed within the time required by the CCRB Act.

The OEA disagreed with the MPD's argument that even if police officers maintain a right to notice and an opportunity to comment under the CMPA, these requirements were satisfied under the requirements of the CCRB Act. The OEA noted that the MPD did not cite any provision of the CCRB Act which provided for the employee to receive notice and an opportunity to respond to the proposed discipline. Such an opportunity would be impossible under the structure of the CCRB Act, because during the investigatory and hearing process of the CCRB Act, a proposal regarding discipline has not yet been formulated. Further, under the CCRB Act, the employee does not receive an additional opportunity to respond once an action is actually proposed. Thus, the OEA concluded that the CCRB Act does not satisfy the procedures required by the CMPA.

The MPD also argued that the forty-five-day decision-making period provided for in the CMPA is superseded by the thirty-day period in the CCRB Act and claimed that satisfying the procedures of the CMPA within the CCRB Act's thirty-day period is administratively impossible. The OEA agreed that the MPD must reach a final decision within the thirty-day period specified in the CCRB Act[17] rather than forty-five days, and that the CMPA was amended to this extent. However, the OEA found that this reduction in the time period did not make compliance with the CMPA impossible, and that mere inconvenience or difficulty in compliance does not allow a statutory mandate to be ignored.

The MPD sought judicial review of the OEA board decision pursuant to Superior Court Agency Rule 1 (1993) and D.C.Code § 1–606.3(d) (1992).[18] By Memorandum and Order dated April 5, 1991, the trial court affirmed the OEA's decision on the ground that it was supported by substantial evidence on the record and was not clearly erroneous as a matter of law. The MPD has now appealed to this court for review.

---

16. More precisely, the hearing examiners recommended to a three member panel of the OEA board that it reverse and remand the cases to the MPD for proceedings consistent with the CMPA. The reviewing panel adopted the examiners' recommendations in their entirety.

17. This time period may in fact extend up to sixty days if a proposed disciplinary action is referred to the Mayor. D.C.Code § 4–902(c) allows the Mayor thirty days within which to act following the transmittal to the Mayor of the recommendation of the Chief of Police.

18. The respondent in the Superior Court was the OEA. The appellees herein were intervenors opposing the MPD in the proceeding before the Superior Court.

## II.

### A.

■ Several legal principles guide our analysis. First, it is a well-settled principle of statutory construction that repeals by implication are not favored. *Luck v. District of Columbia,* 617 A.2d 509, 514 (D.C.1992); *Goodwin v. District of Columbia Bd. of Educ.,* 343 A.2d 63, 65 (D.C.1975) (per curiam). When two statutes appear to apply to the same situation, and there is no affirmative showing of an intention to repeal the earlier statute, both statutes should be given effect unless they are irreconcilable. *Morton v. Mancari,* 417 U.S. 535, 551, 94 S.Ct. 2474, 2483, 41 L.Ed.2d 290 (1974).

■ Second, even if there is a positive repugnancy between the old and the new statutes such that they are irreconcilable, the older statute is repealed only to the extent of the irreconcilability. *United States v. Borden Co.,* 308 U.S. 188, 198–99, 60 S.Ct. 182, 188–89, 84 L.Ed. 181 (1939); *United States v. Young,* 376 A.2d 809, 813 (D.C.1977). Moreover, the process of reconciliation involves retaining the whole of the newer and more specific statute and retaining as much of the older and more general statute as is reasonably possible. *See* 1A NORMAN J. SINGER, SUTHERLAND STATUTES AND STATUTORY CONSTRUCTION § 23.16 (5th ed. 1993). Indeed, here the CCRB Act by its own terms specifically overrides prior-enacted laws which are "inconsistent or conflict with" the CCRB Act. D.C.Code § 4–910, *see* note 13 *supra,* and the implementing regulations of the CMPA contain a similar provision with respect to conflicting laws or regulations addressed to police officers. *See* note 7 *supra.* Therefore, we must determine the extent to which the CMPA's provisions governing adverse actions can fit within the statutory framework of the CCRB Act, and to the extent that they can, how they must be reconciled.

■ Third, while this court gives special deference to an agency in the agency's interpretation of a statute that the agency is empowered to administer and enforce, *see, e.g., Timus v. District of Columbia Dep't of Human Rights,* 633 A.2d 751, 758–59 (D.C. 1993) (en banc; per curiam), this deference is less suited to a decision interpreting the relationship between the CCRB Act and the CMPA. In this case, the OEA was required to do more than interpret its own statute; it was also required to interpret the CCRB Act, which it does not administer, and to reconcile the provisions of the two Acts. The concept of the special knowledge and expertise of an agency that underlies the deference rule has less applicability here.[19]

### B.

■ The principal issue presented on this appeal is the correctness of the OEA's rejection of the MPD's argument that the CCRB Act superseded in all respects those provisions of the CMPA relating to disciplinary proceedings within an agency. We agree with the OEA.

There is no indication that the legislature intended such a complete repeal. On the contrary, the CCRB Act not only specifically refers to the CMPA, but contains a proviso that "all rights provided by [the CMPA] as amended by this chapter, including the right to appeal before the [OEA] and the right to a trial board hearing prior to dismissal[,] are maintained." D.C.Code § 4–902(c) (1993 Supp.). We cannot read the word "including" as intended to exclude rights other than the two mentioned. On the contrary, the reference to "all rights" except as "amended" indicates to us an intent that the two acts be reconciled to the extent possible.

The MPD sets forth several examples of provisions of the two acts that it asserts are irreconcilable, but we do not think they compel the conclusion that the CMPA does not apply at all. Rather, we think that, within the accepted principles of statutory construction described above, the OEA properly reconciled the statutes to the extent possible,

---

19. Although review of the OEA's decision was initially in the Superior Court pursuant to D.C.Code § 1–606.3(d), we employ the same scope of review as in administrative cases that come directly to this court. *Teamsters Local Union 1714 v. Public Employee Relations Bd.,* 579 A.2d 706, 709 (D.C.1990); *Stokes v. District of Columbia,* 502 A.2d 1006, 1010 (D.C.1985).

finding an implicit repeal only of the specific provisions in which a conflict occurred.

As the OEA acknowledged, one clear area of conflict is in the designated time periods for action. The CMPA gives the head of the agency forty-five days from the time that the agency learns of the acts allegedly constituting cause to initiate the adverse or corrective action and forty-five days from the delivery of the notice to the employee to make a decision. The first forty-five-day period can have no application to the proceedings of the CCRB Act prior to the receipt by the Chief of the recommendations of the Board, for which the statute provides its own time periods, and we do not understand the OEA to suggest the contrary. The CCRB Act, on the other hand, gives the Chief only thirty days from the time that the MPD receives the CCRB's recommendation to implement that recommendation. The MPD argues that the CMPA's time period for adverse and corrective actions cannot be reconciled with the mandatory thirty-day requirement of the CCRB Act. While indubitably the notice requirement does somewhat complicate processing the CCRB's recommendations, we do not think that the OEA erred in concluding that the MPD had not shown that these requirements were irreconcilable.[20]

Another area in which appellant argues that an irremediable conflict exists is the situation in which the Chief fails to take action within thirty days of receipt of the CCRB's recommendation. According to the CCRB Act, this failure is deemed to be "final action ... ratifying the findings and recommendations of the [CCRB], after which an aggrieved officer may exercise any right of review provided by law." D.C.Code § 4–903(c). Appellant argues that the Chief's inaction being deemed final action is inescapably in conflict with the adverse or corrective action proceeding requirements. We fail to see why this is so. The Chief's inaction is "final action" in that it is an act of ratification by the Chief of the action proposed by the CCRB, and, as herein discussed, the officer will have had the opportunity to respond to the proposed action as recommended by the CCRB.[21]

Appellant also argues that the terminology in the CMPA describing the notice to the employee as bringing "charges" against the employee would make no sense in the context of the CCRB Act, in which the CCRB would already have received a complaint and made a recommendation regarding proposed disciplinary action. Appellant contends that at that stage, it makes no sense to "initiate adverse actions." Looking at the CCRB Act as a whole, however, leads to a different conclusion. Prior to the CCRB's recommendation, the CCRB is merely investigating a complaint. That the employee is "charged" only after the CCRB makes its recommendation is not an unreasonable way to view the language of the CMPA. The CCRB Act does not empower the CCRB to bring charges against employees; it empowers them to make recommendations to the Chief. It appears true, to be sure, that the investigation of the complaint provided by the CCRB Act constitutes the functional equivalent of the officer's right to respond to the "charges" contained in the CMPA notice, but this is no reason to read the terminology in the two Acts as proving irreconcilability.[22]

20. As previously noted, the OEA does not directly address the time provision applicable if the Chief decides to refer the matter to the Mayor. The CCRB Act specifically gives the Mayor a full thirty days to act *after* the date of transmittal of the Chief's recommendation to the Mayor. D.C.Code § 4–902(c). It seems apparent that this provision must be taken into account in interpreting the requirement in § 4–903(c) that within thirty days of the receipt of recommendations by the Board, the Chief shall "[i]mplement or otherwise issue a final order with respect to such recommendations."

21. Appellant argues on appeal that the provisions of the CCRB Act which make the Chief or the Mayor the final decision-maker are in irreconcilable conflict with the CMPA provisions regarding negotiated labor agreements. We disagree. The CCRB Act explicitly amended that portion of the CMPA in situations where the Chief refers the matter to a trial board. D.C.Code § 4–903(c). The CCRB Act provisions at issue specifically state that the rights provided by the CMPA are maintained, D.C.Code § 4–902(c), and any right of review provided by law may be exercised after a final decision. D.C.Code § 4–903(c). This is not inconsistent with the CMPA.

22. Appellant claims that there is another conflict which demonstrates that the adverse action proceedings of the CMPA have been implicitly re-

## C.

It may fairly be said, however, that the OEA, having adopted the basic principle that the CMPA is not superseded for all purposes in its applicability to disciplinary proceedings within the agency, does not in its decision treat in detail the precise manner in which various areas of conflict between the two Acts may be reconciled. Reviewing only the language of the OEA's decision, we would find difficulty in determining precisely how the OEA intended the CMPA and its corresponding regulations to be reconciled in a subordinated manner to the controlling provisions of the CCRB Act. In particular, we would find it difficult to discern how and when the OEA contemplates that notice of the "proposed action" will be given in accordance with the CMPA. As a corollary of this issue, it would be difficult to discern from its order how the OEA intends to handle situations where the Chief increases or decreases the sanction from that proposed by the CCRB. The broad statement by the OEA that the CCRB Act repeals the CMPA to the extent of reducing the time limitations does not squarely address these important issues and is not sufficient to enable the MPD to carry out its functions under the two acts.

 Fortunately, the recommendations of the four hearing examiners that initially heard the appeals to the OEA provide a more thorough understanding of what the OEA's decision under review intended. Because the OEA affirmed the recommendations of the hearing examiners and indicated agreement therewith, we look to those recommendations for guidance in understanding the intent of the OEA in its final order.[23]

The hearing examiners' recommendations, as we understand them, envision that the recommendation of the CCRB, notice of which is sent to the employee at the same time that it is sent to the Chief, D.C.Code § 4–903(b)(3), constitutes the notice to the employee of the charges and the proposed disciplinary action as contemplated by the CMPA. The CMPA requirement of an opportunity to respond to the charges themselves will have been satisfied by the CCRB Act procedures, particularly since the officers here had a full opportunity to participate in the hearing before the CCRB.[24] The employee will have at least ten days to respond to the Chief with respect to the disciplinary

pealed—the distinction between the definition of "cause" in the CMPA and the three enumerated bases for action under the CCRB Act. Under the CMPA, an employee's action is subject to an adverse or corrective action proceeding only if it fits within one of the twenty-one enumerated grounds of "cause." *See* notes 2 & 4 *supra.* Under the CCRB Act, the CCRB must determine whether or not the alleged action of the police officer falls within one of the three areas in which the CCRB is empowered to act. If it does, then the CCRB is empowered to make a recommendation to the Chief with respect to that action. The OEA declined to determine whether, in fact, the three areas in which the CCRB is authorized to make recommendations are additional causes, serving to amend the CMPA in that respect, or instead, whether the alleged activity had to fall within at least one of the twenty-one categories of cause set forth in the CMPA. The OEA found it unnecessary to decide this issue because it ruled that even assuming the actions of the employees had to fit within one of the twenty-one causes, all of the relevant actions could be classified under at least one of those categories. We likewise find it unnecessary to determine this issue on this appeal. However, under the principles of reconciliation of the two Acts set forth above, it would seem that in a direct clash, absent some overriding consider-

ations which we are at present unable to perceive, the definition of the CCRB Act would have to prevail.

23. We recognize that this court can only affirm an administrative agency's decision for the reasons given by the administrative agency, *National R.R. Passenger Corp. v. Boston & Maine Corp.,* —— U.S. ——, ——, 112 S.Ct. 1394, 1403, 118 L.Ed.2d 52 (1992); *Cooper v. District of Columbia Dep't of Employment Servs.,* 588 A.2d 1172, 1176 (D.C.1991), and we emphasize that we look to the hearing examiners' recommendations only in an effort to more fully understand the precise meaning of the agency's final determination. *See Common Cause v. Federal Election Comm'n,* 285 U.S.App.D.C. 11, 12, 906 F.2d 705, 706 (1990) (court will uphold an agency's decision that has less than ideal clarity if the agency's path may reasonably be discerned).

24. We need not address the expanded CCRB procedures, *see* note 10 *supra,* but note that they continue to offer an opportunity to respond to the charges, D.C.Code § 4–905(a)(1) (1993 Supp.), require summary adjudication decisions to be made on the preponderance of the evidence, 6A DCMR § 2118.4, 40 D.C.Reg. 2926, and allow petitions for reconsideration by the CCRB, 6A DCMR § 2118.7, 40 D.C.Reg. 2926.

action recommended by the Board.[25] Within thirty days after receipt of the recommendation of the CCRB, the Chief must take action. The Chief's choices of action are to send the matter to a police trial board, to agree with the recommendation of the CCRB and implement such recommendation, or to send the Chief's own recommendation (either an increase or a decrease) to the Mayor for the Mayor to decide between the CCRB's recommendation and the Chief's recommendation, or to decide on compromise discipline. If the Chief follows the recommendation of the CCRB, then everything required by the CMPA has been satisfied.[26] If the Chief makes a recommendation for an increase in the proposed discipline, which he must forward to the Mayor, the officer should have an opportunity to comment on the proposed increase.[27] (In the CMPA, the final decision-maker cannot increase the proposed sanction, so the need to respond to a proposed increase does not arise.) If the Chief does not act at all within the required thirty-day period, this, too, can be reconciled with the CMPA. In that case, the Chief's inaction is a ratification of the CCRB's findings and recommendations, upon which the officer has had the chance to comment.

Accordingly, the OEA's decision, interpreted in accordance with this opinion and leaving open for future resolution those points not explicitly resolved therein, is

*Affirmed.*

FARRELL, Associate Judge, concurring:

I join the court's opinion because of the express language of D.C.Code § 4–902(c),

"maintain[ing]" all rights provided by the CMPA "as amended by this chapter...." Even so this is an exceedingly close case, because the CCRB Act bears all the earmarks of a comprehensive statutory scheme designed to supplant, not merely "amend," the CMPA as regards civilian-initiated charges of police misconduct. I am comfortable in the result because in the end the CMPA's notice and response requirements— severely limited in their application here— should not impair operation of the CCRB Act. *See ante* at 1147 n. 25.

---

25. As already indicated, the officer's right to respond is confined to the issue of proposed sanction; in effect (though we deal here not with a criminal sanction) it is a right of allocution. Any effort by the officer to reargue the existence of "cause"—of misconduct found by the CCRB— in responding under the CMPA must be rejected by the Chief. In that way the already short thirty-day period the Chief has in which to act on the Board's recommendation is not unduly compressed by his having to wait the ten days or more which the CMPA allows for the officer's response.

26. If the Chief agrees with the recommendation of the CCRB and decides to implement the proposed discipline, there is no requirement of a

written explanation of that decision. This follows from the provision declaring that if the Chief fails to act at all, the recommendation of the CCRB becomes final, a situation where necessarily the Chief will have provided no explanation.

27. This would appear to be the only occasion where an officer should be afforded an opportunity to comment in addition to the officer's right to comment on the recommendation of the CCRB upon receiving the notice of that recommendation as required by D.C.Code § 4–, 903(b)(3). If the Chief recommends a decrease, there is no occasion for further comment, any more than with respect to a decrease in the proposed action under the CMPA.