*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 12-CV-1403

DISTRICT OF COLUMBIA METROPOLITAN
POLICE DEPARTMENT, APPELLANT,

v.

DISTRICT OF COLUMBIA OFFICE OF
EMPLOYEE APPEALS AND JAMES O'BOYLE, APPELLEES.

Appeal from an Order of the
Superior Court of the District of Columbia
(MPA-2048-10)

(Hon. Brian F. Holeman, Trial Judge)

(Argued January 28, 2014                    Decided April 10, 2014)

(Amended May 22, 2014[1])

*Holly M. Johnson*, Assistant Attorney General, with whom *Irvin B. Nathan*, Attorney General for the District of Columbia, *Todd S. Kim*, Solicitor General, and *Donna M. Murasky*, Deputy Solicitor General, were on the brief, for appellant.

*Robert E. Deso* for appellee James O'Boyle.

---

[1] This opinion was initially released on April 10, 2014. Subsequently, on May 22, 2014, the language appearing on the penultimate line of the last page was amended to read, "Accordingly, the order of Superior Court is hereby…" where it formerly read, "Accordingly, the OEA's order is hereby…"

*Lasheka Brown Bassey* filed a statement in lieu of brief for appellee District of Columbia Office of Employee Appeals.

Before FISHER and THOMPSON, *Associate Judges*, and PRYOR, *Senior Judge*.

PRYOR, *Senior Judge*: Appellant, District of Columbia Metropolitan Police Department (MPD), appeals the decision of the D.C. Superior Court affirming the District of Columbia Office of Employee Appeals (OEA) order on remand from the OEA Board that reversed appellee James O'Boyle's termination from MPD and reduced his four-month suspension without pay to twenty days. On appeal, appellant first argues that the OEA erred as a matter of law when it held that the "indefinite suspension without pay" and subsequent termination of appellee constituted unlawful "double punishment" for his driving while intoxicated ("DWI") arrest and conviction. Second, appellant argues that the OEA abused its discretion when it found that appellant had not legitimately distinguished appellee from other MPD members arrested and convicted of DWI or driving under the influence of alcohol (DUI) who had not been terminated. We reverse and remand for further proceedings consistent with this opinion.

**I.**

On April 5, 2004, while off-duty, appellee was driving his personal vehicle when he struck another motorist in Virginia and was arrested for driving while

intoxicated ("DWI"), with a blood-alcohol content of .27—more than three times the legal limit. The day after the arrest, appellee entered voluntary leave-without-pay status with MPD to pursue treatment for his alcohol addiction, which consisted of a five-day, in-hospital program, and twenty-seven days residential treatment program.

On July 21, 2004, appellee was tried and convicted of DWI and sentenced to 180 days in jail with 170 days suspended, his driver's license was suspended for a year, and he was fined $500. Appellee was incarcerated for ten days. On August 11, 2004, MPD served appellee with advance notice of its intent to change his status from voluntary leave without pay to "Indefinite Suspension Without Pay pending the final outcome of this case." Appellee appealed to MPD, but his appeal was denied on August 30, 2004, and the suspension went into effect on September 14, 2004. MPD's final notice of suspension advised appellee that he could appeal the suspension to the Chief of Police and also pursue arbitration or appeal to OEA. The record does not reveal that appellee pursued these options.

On September 22, 2004, MPD completed its investigation of appellee, concluding that he should be cited for adverse action, and on November 8, 2004, it served appellee with advance notice of termination. Appellee was advised that he

could request a hearing, but he did not request a hearing, offer any mitigating evidence, or contest the facts of MPD's investigative report. On December 3, 2004, MPD concluded, based on the evidence in its report, that appellee's conduct warranted his termination.

On December 15, 2004, appellee appealed his termination to the Chief of Police, arguing that discipline following his suspension without pay amounted to an impermissible second disciplinary action for the same conduct and that his discipline was disproportionate to that imposed on other similarly situated MPD officers. The Chief of Police denied the appeal and set appellee's discharge to be effective January 8, 2005. On February 1, 2005, appellee appealed his termination to the OEA, reiterating his arguments as stated earlier. On October 17, 2006, the OEA upheld the termination, finding that the suspension was only an interim measure, not disciplinary, and that appellee was not similarly situated to the other MPD employees convicted of DUI or DWI.

On appeal, the OEA Board reversed and remanded the OEA's decision, finding that "suspension of an Employee without pay is a disciplinary adverse action," and that appellee's "subsequent termination therefore constitutes a double punishment for the same alleged misconduct." The Board also found that appellee's termination was unreasonably disproportionate to the penalties imposed

on other MPD employees convicted of DUI or DWI. On remand, the OEA reduced appellee's termination to a thirty-day suspension, with ten days held in abeyance. Appellant appealed the decision of the OEA to the D.C. Superior Court, which affirmed the OEA's decision.

## II.

On appeal from the Superior Court, this court reviews decisions of OEA as though the appeal has been taken directly to this court. *Brown v. District of Columbia Dep't of Corr.*, 993 A.2d 529, 532 (D.C. 2010). "When reviewing an [] OEA decision, we . . . 'must affirm the OEA's decision so long as it is supported by substantial evidence in the record and otherwise in accordance with law.'" *Dupree v. District of Columbia Office of Emp. Appeals*, 36 A.3d 826, 830 (D.C. 2011) (quoting *Settlemire v. District of Columbia Office of Emp. Appeals*, 898 A.2d 902, 905 n.4 (D.C. 2006)). "[W]e will only reverse where the OEA's action was arbitrary, capricious, or an abuse of discretion." *Jahr v. District of Columbia Office of Emp. Appeals*, 19 A.3d 334, 340 (D.C. 2011) (internal quotations omitted). In turn, the OEA's review of an agency decision "is limited to simply ensur[ing] that managerial discretion has been legitimately invoked and properly exercised." *Id.* (internal quotation omitted). The OEA may not "substitute its judgment for that of the agency in deciding whether a particular penalty is

appropriate." *Stokes v. District of Columbia*, 502 A.2d 1006, 1011 (D.C. 1985) (quotation omitted). It may overturn the agency's decision only if it finds that the agency "failed to weigh the relevant factors, or that the agency's judgment clearly exceeded the limits of reasonableness." *Id.*

## III.

The primary issue in this appeal stems from the order of the OEA which reversed a termination order relating to appellee and reinstated him as a member of the police force. As stated, appellant contends that the OEA erred on two grounds when it vacated the termination order. On the other hand, appellee relies upon the OEA's ruling that his unpaid suspension was an adverse disciplinary action and therefore appellant's subsequent termination of appellee constituted unlawful "double punishment" for his conviction of driving a vehicle while intoxicated. Appellee argues that appellant lost its ability to exercise its statutory authority to impose an interim suspension because it failed to cite the pertinent statutory provision as the basis for its actions.

### (A)

Before suspending an employee without pay, MPD must provide the employee with written notice of the proposed suspension. D.C. Code § 1-

616.54 (c). Notice may be accomplished in person, D.C. Code § 1-616.54 (c), by "leaving a copy at the employee's home with some person of suitable age and discretion who is present," DCMR 6-B1620.8 (2013), or by reading the notice to the employee over the phone prior to actual delivery of the written notice. D.C. Code § 1-616.54 (c). Written notice must inform the employee of the following: "(1) The reasons for the proposed enforced leave; (2) The beginning and ending dates of administrative leave; (3) The beginning date of the proposed enforced leave; (4) His or her right to respond, orally or in writing, or both, to the notice; and (5) His or her right to be represented by an attorney or other representative." D.C. Code § 1-616.54 (d). Prior to the suspension, MPD must initially place the employee "on administrative leave for a period of 5 work days, followed by enforced annual leave or, if no annual leave is available, leave without pay." D.C. Code § 1-616.54 (b). MPD is authorized to continue the employee's suspension until "action . . . [is] taken as a result of the event that caused this administrative [suspension] . . . or a determination is made that no such action . . . will be taken. D.C. Code § 1-616.54 (b).

Appellant served appellee with written notice of the proposed interim suspension without pay, "pending resolution of the [ ] administrative action against [him]." The notice states that the serving officer left the notice at appellee's door

on August 17, 2004. The record is unclear whether the notice was posted to the door, or left with someone of suitable age. In any case, it is clear that appellee received the notice because he made a timely appeal of the proposed suspension on August 26, 2004.

The notice explained that suspension was being proposed for "conduct unbecoming an officer," because "on Wednesday, July 21, 2004, in Fairfax County, VA, Sergeant James O'Boyle was convicted of driving while intoxicated[,] . . . was sentenced to 180 days in jail with 170 days suspended[,] . . . was fined $500.00 and has a 12-month suspended license." The notice also stated that the suspension would not become effective until fifteen days after receipt of the notice, and that appellee had a right to respond to the proposed action and have a representative of his choosing. Appellee's suspension then went into effect on September 14, 2004.

When appellee was served with the suspension notice, he was already on voluntary leave without pay, which he had taken so that he could be available for his DWI trial, to be incarcerated for the DWI conviction, and undergo two alcohol treatment programs. On appeal, appellant stated that it first placed appellee on

leave without pay because presumably he had already exhausted his administrative leave with pay and his annual leave.[2]

**(B)**

The D.C. Code, DCMR, and MPD's General Order No. 1202.1 authorize MPD to impose interim administrative suspension without pay until the agency completes its own investigation and determines whether discipline should be imposed. *See* D.C. Code §§ 1-616.54 (a)(3), (b), (c); 6B DCMR §§ 1620.1(c), 1620.4, 1620.12(a)-(c), 1620.14, 1620.15; MPD General Order No. 1202.1 (D)2(b)(1). It is expressly provided that such interim suspension "is not a corrective or adverse action," 6B DCMR § 1620.2, and is "distinguished from disciplinary suspension imposed as punishment following a final determination of misconduct." MPD General Order No. 1202.1 (D)2(b)(1). This statement of legislative (and rule-making) administrative procedure, reiterated three times, is an indication that a thoughtful and comprehensive process is envisioned with regard to an officer's suspension or termination. At bottom, appellee, in viewing the undisputed evolving events in this case, urges that appellant's failure to expressly cite the pertinent statutory authority pertaining to suspensions from duty

---

[2] Appellee has not presented any evidence in the record demonstrating that he had any accrued and unused administrative paid-leave or annual leave available.

necessarily causes the suspension to be an adverse action. It is not surprising that there is no precedent or other authority offered to support this contention as there is no such requirement. Nonetheless we observe it is good practice, in an effort to avoid litigation, as here, for appellant to state the authority upon which it relies in matters of this kind. Indeed we also observe that appellee did not pursue some of the administrative remedies which were available to him.

Applying our standard of review to the findings of fact and evidence of record determined by the OEA on remand, we conclude that there was not substantial evidence to support the findings. *See Dupree*, 36 A.3d at 830. Thus we conclude that the OEA erred in vacating the order terminating appellee's appointment as an officer of the District of Columbia Police Department. Appellee's unpaid suspension was an authorized interim administrative suspension—rather than final adverse action—authorized pursuant to the District of Columbia Comprehensive Merit Personnel Act ("CMPA"), D.C. Code § 1-616.54 (2006 Repl.), and therefore appellee's subsequent termination does not constitute "double punishment."

**IV.**

Appellant also asserts that the OEA abused its discretion when it found that there was disparate treatment of appellee because appellant had not legitimately distinguished appellee from other MPD members arrested and convicted of DWI or driving under the influence of alcohol (DUI) who had not been terminated. To justify appellee's punishment, appellant was required to prove that it had a legitimate basis for distinguishing appellee from other MPD members convicted of DUI or DWI who were not terminated. *See Stokes v. District of Columbia*, 502 A.2d 1006, 1009-11 (D.C. 1985). When reviewing the penalty imposed by an agency, the OEA is guided by the principles established in *Douglas v. Veterans Admin.*, 5 M.S.P.R. 280 (M.S.P.B. 1981). The twelve *Douglas* factors are:

> (1) The nature and seriousness of the offense, and its relation to the employee's duties, position and responsibilities, including whether the offense was intentional or technical or inadvertent, or was committed maliciously or for gain, or was frequently repeated;
>
> (2) the employee's job level and type of employment, including supervisory or fiduciary role, contacts with the public, and prominence of the position;
>
> (3) the employee's past disciplinary record;
>
> (4) the employee's past work record, including length of service, performance on the job, ability to get along with fellow workers, and dependability;

(5) the effect of the offense upon the employee's ability to perform at a satisfactory level and its effect upon supervisors' confidence in the employee's ability to perform his assigned duties;

(6) consistency of the penalty with those imposed upon other employees for the same or similar offenses;

(7) consistency of the penalty with any applicable agency table of penalties;

(8) the notoriety of the offense and its impact upon the reputation of the agency;

(9) the clarity with which the employee was on notice of any rules that were violated in committing the offense, or had been warned about the conduct in question;

(10) the potential for employee rehabilitation;

(11) mitigating circumstances surrounding the offense such as unusual job tensions, personality problems, mental impairment, harassment, or bad faith, malice or provocation on the part of others involved in the matter; and

(12) the adequacy and effectiveness of alternative sanctions to deter such conduct in the future by the employee or others.

*Brown v. Watts*, 993 A.2d 529, 532, n.3 (D.C. 2010) (quoting *Douglas*, 5 MSPB 313, 5 M.S.P.R. at 305-06).

On remand, the OEA could overturn appellant's decision only if it found that appellant "failed to weigh the relevant factors, or that the agency's judgment clearly exceeded the limits of reasonableness." *Stokes v. District of Columbia*, 502 A.2d 1006, 1011 (D.C. 1985). Without assessing appellant's *Douglas* analysis, or considering any of the *Douglas* factors, the OEA concluded that appellee had not received the same treatment as similarly situated employees and overturned appellee's termination. Appellant had submitted an affidavit from its Director of Human Resources attesting that the agency had used the *Douglas* factors and determined that termination was the appropriate penalty for appellee.

Appellant had addressed several *Douglas* factors in its rationale for terminating appellee when it issued its final notice of adverse action. It addressed the first *Douglas* factor, finding that appellee's misconduct was "of an egregious nature," and noting that he had been arrested with a blood-alcohol content "over three times the legal limit" in Virginia, "served ten (10) days" in jail, and had his "driver's license . . . suspended for 12 months." Other similarly situated officers had served no such jail time for their offenses. Appellant also assessed the eighth *Douglas* factor, finding that appellee's offense "tended to erode public confidence and respect of [MPD]." Finally, appellant addressed the second and eleventh *Douglas* factors, as appellee held a supervisory rank, had "failed to offer any

evidence to mitigate, exonerate, or controvert" his action, had "shown [his] disregard for the responsibilities and standards of conduct [he] accepted as a law enforcement officer," and his behavior was "unacceptable and contrary to the expectations of the community." We conclude that the OEA erred by overturning appellee's termination, which was consistent with the range of penalties permitted for such conduct, without assessing appellant's *Douglas* analysis or considering any of the *Douglas* factors.[3]

## V.

The final issue we address on appeal is whether appellee should be compensated for lost wages. On remand, OEA ordered that appellant's action suspending appellee from August 30, 2004, until January 8, 2005, would be modified and reduced to a thirty-day suspension, with ten days held in abeyance, and that appellant reinstate appellee and reimburse him all pay and benefits lost as a result of the "removal and excessive suspension." The only relevant provision on

---

[3] We also reject appellee's argument that appellant forfeited its right to distinguish him from other MPD members because it did not articulate its *Douglas* analysis before he was terminated. There is no requirement that an agency articulate its *Douglas* analysis *before* terminating an employee. *See Boucher v. USPS*, 118 M.S.P.R. 640, 649 (M.S.P.B. 2012) (In fact, "the agency's burden [under *Douglas*] . . . is triggered by the appellant's initial showing that . . . the agency treated similarly-situated employees differently.").

the record before this court pertaining to the issue of retroactively restoring pay states, "[i]f the basis for placing an employee on enforced leave pursuant to this section does *not* result in the taking of a disciplinary action . . . any annual leave or pay lost as a result of this administrative action shall be restored retroactively." D.C. Code § 1-616.54 (g) (emphasis added).

Given our reversal of OEA's order, and our decision to uphold appellant's interim suspension and termination decisions, there is no justification for reimbursement of lost wages associated with appellee's termination or suspension. Appellee asserts that during his interim suspension, appellant should have first placed him on paid administrative leave for a period of five work days, and then allowed him to use annual leave or compensatory time. Appellee, however, was already on voluntary leave without pay when he was served with the suspension notice—so that he could undergo two alcohol treatment programs and serve jail-time for the DWI offense—suggesting that he did not have any available paid administrative leave, annual leave or compensatory time. Appellee did not present any evidence or make any argument on the record that he had available paid administrative leave, annual leave or compensatory time; rather he merely asserts that appellant did not consider his leave status when it suspended him. We conclude, therefore, that the OEA erred when it ordered appellant to reimburse

appellee for all pay and benefits lost as a result of the "removal and excessive suspension." Appellee is not entitled to pay lost as a result of this administrative action.

Accordingly, the order of the Superior Court is hereby

*Reversed.*